SAINT PAUL, STILLWATER & TAYLOR'S FALLS RAILROAD COMPANY *vs.* FIRST DIVISION OF THE ST. PAUL & PACIFIC RAILROAD COMPANY and others.

March 29, 1879.

**Patents for Lands on Navigable Rivers.**—Patents, by the general government, of public lands bordering on streams, are not limited by the meander lines. Following *Schurmeier* v. *St. Paul & Pacific R. Co.*, 10 Minn. 82, and 7 Wall. 272. Such patents of public lands bordering on streams navigable in fact, issued under the acts of congress providing for the survey and sale of the public lands, do not take to the middle line of the stream, but stop at the stream ; following in this, 7 Wall. 272.

**Same—Islands in River not shown on Plat.**—The official plat.of the survey of section 5, town 28, range 22, and of section 32, town 29, same range, showed that lot 1 of the former section, and lots 3 and 4 of the latter section, abut on the Mississippi river, showed no island between these lots and the body of the river, the main stream, and no island opposite those lots. *Held*, that the government issuing patents for the lots mentioned under the surveys, as shown by the plats, was bound by the plats, and that the patentees took to the body of the river, although in fact there lay opposite the lots, and between the main land and the body of the river, a strip of land which might in fact be an island, and that the title to such strip passed to the patentees.

Same—Subsequent Survey and Pre-emption of Island.—After patents for these lots were issued, the strip was, under instructions from the general land-office, surveyed as an island. *Held*, that this survey was unauthorized. Also, that the land officers had no jurisdiction to entertain a claim of a person to pre-empt such strip under such survey.

Appeal by plaintiff from an order of the district court for Ramsey county, *Wilkin*, J., presiding, refusing a new trial. The action was ejectment, and the case is stated in the opinion.

*John B. & W. H. Sanborn* and *H. F. Masterson*, for appellant.

*Bigelow, Flandrau & Clark* and *Geo. L. & Chas. E. Otis*, for respondents.

GILFILLAN, C. J. The controversy in this case is concerning the title to a strip of land lying along the northerly shore of the Mississippi river at St. Paul, and opposite lot one, section five, town twenty-eight, range twenty-two, and lots three and four, section thirty-two, town twenty-nine, range twenty-two. Lot one was conveyed by patent to Louis Robert, March 24, 1849, and lots three and four to Norman W. Kittson, the same date. The surveys were made in 1848, and approved, and the official plats of the townships were of course, at the date of the patents, on file in the land-office of the district. In 1852, the strip in question was, pursuant to instructions from the general land-office, surveyed as an island, and inserted upon the plats as lot three, section five above, and lot five of section thirty-two above, and, April 7, 1855, was conveyed by patent to John M. Lamb. Under the latter, this plaintiff claims title; the defendants under Robert and Kittson. Lot one, section five, and lots three and four, section thirty-two, abut, according to the official plat, on the river. The plaintiff claims, as a fact, that at the date of the patents to Robert and Kittson, the strip in controversy was an island, surrounded at all stages of water by the waters of the river, with a channel and current between it and the main shore. The defendants claim, as a fact, that it was

then a part of the main shore, although in high water entirely, and in medium and low water partly, separated from it by a slough, into which the waters of the river flowed. As a question of law, the defendants claim that the rule of the common law, that the grantee, in a grant bounded generally upon a non-navigable stream, takes to the middle of the stream, is in this state applicable to the Mississippi river and its tributaries, they being non-navigable in the common-law sense of the term as applied in the construction of grants, and that this rule controls in the construction of patents of the public lands issued by the general government, as well as to conveyances between private persons. The plaintiff claims that the patentee of a governmental subdivision, bordering on a stream navigable in fact, takes only to the meandered line, or, at most, that he takes only to low-water mark. On the trial below, the parties having given evidence of their respective claims as to the fact, and rested, the court held that the patentees, Robert and Kittson, took, under their patents, to the middle line of the river, and directed a verdict for the defendants. From an order denying a new trial, this appeal is taken.

This court, in *Schurmeier* v. *St. Paul & Pacific R. Co.*, 10 Minn. 59 (82,) decided that the meander lines of governmental subdivisions, bordering on navigable rivers, do not limit the grant in a patent; and this decision was affirmed by the supreme court of the United States in the same case. *Railroad Co.* v. *Schurmeir*, 7 Wall. 272. The question is therefore set at rest. In the same case, this court held that the common-law rule as to the construction of grants of land bordering on streams is in force in this state, and is applicable to patents or grants of the public lands by the general government. But patents and grants by the general governments may be controlled in this respect, as in others, by the acts of congress regulating the survey and sale of the public lands; and, in the case we have cited, the supreme court of the United States decided that, under the various acts of

3

congress providing for the survey and sale of the public lands, the title of the patentee of lands bordering on streams navigable in fact stops at the stream, and that the title to the beds of such streams is reserved to the government. This, being a construction of statutes of the United States by the court of last resort, is binding, and settles the rule applicable to patents of the public lands by the general government, issued pursuant to the statutes referred to. The court below was therefore wrong in its reason for directing a verdict.

It remains to be considered whether, aside from this reason, the defendants were entitled to a verdict. The record contains copies of the official plats of section five, town twenty-eight, and section thirty-two, town twenty-nine. Upon these plats the Mississippi river, through or opposite these sections, is delineated. The plats show no island in that part of the river, no land between which and the main land any channel runs. From them it appears that the lots granted to Robert and Kittson extend to the body of the river, the main stream. By the survey, as shown on the plats, the strip in question was surveyed, not as an island, but a part of the main land, and included in those lots. After the government has sold lands according to a survey and plat, it cannot (as a general rule, at least,) dispute the truth of such survey and plat. *Bates* v. *Illinois Central R. Co.*, 1 Black, 204; *Lindsey* v. *Hawes*, 2 Black, 554; *Railroad Co.* v. *Schurmeir*, 7 Wall. 272. If there be any case in which, after a sale of the lands, the government may question the accuracy of the survey and plat by which it sold, it is not such a case as this.

There is nothing to call in question the good faith towards the government of the surveyors who made the first survey. The testimony makes it doubtful whether, at the time of that survey, the strip in controversy was an island or part of the main land. In such case, the surveyors may determine, to the best of their judgment, whether such strip should be surveyed as an island or a part of the main land; and if their survey is approved, and the land sold according to it, the government

is bound by their action. This being so, the title to the strip in question passed under the patents to Robert and Kittson, and, as a consequence, the subsequent survey and platting of it as an island was unauthorized, and the patent issued to Lamb, pursuant to it, passed no title. For the same reason, the proceedings of the officers of the land-office, upon Lamb's application to pre-empt under the subsequent survey, which plaintiff offered to prove, were null. Those officers could have no jurisdiction to determine anything in relation to lands which the United States had already conveyed. There was no error in excluding evidence of those proceedings.

Under the views we have expressed as to the effect of the original surveys and plats, and the grants to Robert and Kittson under them, the direction of the court to the jury to return a verdict in favor of defendants, was right.

Order affirmed.

BERRY, J., *dissenting.* As stated in the majority opinion, the official plats of the townships in which the lots purchased of the United States by Robert and Kittson lie, contain a delineation of that part of the Mississippi river lying in those townships, and such plats show no island in the river opposite to said lots. But, except by the absence of any island from this representation of the river, it does not in any way appear whether there was an island there or not, nor that the land in controversy was included in the original survey. Now, as under the decision of the supreme court of the United States, a riparian owner upon the Mississippi river takes *to the stream* and no further, an island—that is, a body of land separated from the shore by a part of the stream—does not pass to the owner of the shore lying opposite to it, by virtue of his riparian ownership. He stops *at the stream.* If there is an island opposite his land, he does not acquire it. He has, therefore, no right to insist that the plat shall show such island, if any there be. The United States is under no obligation to disclose to him the character of the river as clear of

islands or as full of them, any more than it is to disclose the character of the land on the opposite side of the river.　He gets all that he purchased, when he reaches the stream ; what is beyond is no concern of his, as a purchaser from the United States.　I do not, therefore, agree to the position of the majority, that the United States were estopped from claiming that there was an island (to wit, the land in controversy,) opposite the Robert and Kittson lots, by the fact that such island did not appear upon the official plats.　And, for reasons which I need not elaborate, it follows, if I am right, that the question of island or no island should have been left to the jury.　I think there should be a new trial of the case.

-------

This case having been remitted to the district court, judgment was entered on the verdict, and the plaintiff again appealed.

GILFILLAN, C. J.　This case was heard at the last October term of the court upon an appeal from an order denying a motion for a new trial.　This appeal, which is from the judgment entered in the court below since the decision of this court upon the former appeal, presents no question not raised on that appeal.　The judgment will be affirmed for the reasons set forth in the opinion then filed.

BERRY, J.　I adhere to my dissent in the former appeal.