### HARDING v. MINNEAPOLIS NORTHERN RY. CO.

(Circuit Court of Appeals, Eighth Circuit. December 13, 1897.)

#### No. 929.

PUBLIC LANDS—OMISSION OF ISLAND FROM SURVEY—RIGHTS OF RIPARIAN OWNERS.

In 1849 the government made a survey of lands lying on the east bank of the Mississippi river, those opposite being at that time owned by the Indians. Opposite the survey, and near the east side of the river, was a small island, containing about six acres, which was not surveyed nor shown on the plat. An extension of the survey to the island would have brought the corner of four sections near its center, the remainder of two of such sections lying on the west side of the river. In 1853 the land on the west side was surveyed, together with the island, which was then divided into four lots, each included in a different section. Under this survey the island was entered in 1855, and afterwards patented. The land opposite on the east bank was patented in 1849, and no claim to the island was made by the owners thereof for more than 40 years thereafter. *Held* that, under such facts, there was no presumption that the government intended, in omitting the island from the first survey, to relinquish its title thereto, in favor of those who should become owners of the river frontage on the east bank.

In Error to the Circuit Court of the United States for the District of Minnesota.

Action by Edgar Harding against the Minneapolis Northern Railway Company. A verdict was directed for the defendant, and the plaintiff brings error.

M. H. Boutelle (N. H. Chase, on the brief), for plaintiff in error.
J. B. Atwater, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and RINER, District Judge.

THAYER, Circuit Judge. This is a suit in ejectment. The plaintiff in error sued the defendant in error in the lower court to recover the possession of a tract of land in the city of Minneapolis, Minn., which was a part of a formerly well-defined island in the Mississippi river. He deraigned his title to the land in question under a patent issued by the United States to Peare Botenau (properly spelled Pierre Bottineau), on March 25, 1849, whereby there was granted to the patentee, his heirs and assigns, "the northwest quarter of the southwest quarter and lot number one of section fourteen in township twenty-nine north, of range twenty-four west, in the district of lands subject to sale at the Falls of St. Croix, Wisconsin, containing seventy-five acres and thirty-two-hundredths of an acre, according to the official plat of the survey of the said lands returned to the general land office by the surveyor general." The plat which appears on the following page is a copy of the public survey to which reference was made in the aforesaid patent. Lot 1, which is referred to in the patent, is indicated on the plat by red lines, and contains 35.32 acres. It will be observed

## EXHIBIT E.

The two red parallel lines, referred to in the opinion of the court, are indicated by heavy black lines.

## Township No. 29 N. Range No. 24 W. 4th Mer. Minnesota.

The red lines, referred to in the opinion of the court, are indicated by heavy black lines.

84 F.—19

that lot 1 has a river frontage, and, while the fact is not disclosed by the plat of the original survey, yet it is nevertheless true that, at the time said survey was made and filed in the general land office, there was a small island in the Mississippi river in front of lot 1, at the place indicated on the plat by a star, which lay on the east side of the main channel of the Mississippi river, and was subsequently known as "Boom Island." The land claimed by the plaintiff in this case is a part of Boom island, and he asserts a title thereto, not because it was in terms conveyed to him by his grantor, but because he has become the owner, by mesne conveyances under Bottineau, of a part of the land originally patented to him, which abuts on the Mississippi river opposite to the south end of Boom island.

The diagram marked "Exhibit E" shows the outline of Boom island, and the part thereof which is included between the two red parallel lines indicates the portion of the island which is claimed by the plaintiff because of his river frontage. When the survey of March 25, 1849, was made, the Indian title to the lands on the west bank of the Mississippi river had not been extinguished, and the land had not been surveyed, but so much of township 29 N., of range 24 W., as is situated on the west side of the Mississippi river, was surveyed by the government in the year 1853, after the Indian title had been extinguished. On the plat of said last-mentioned survey, which completed the survey of said township, Boom island was duly outlined and platted. On March 25, 1849, Boom island was separated from the east bank of the river by a slough, through which a considerable volume of water then flowed; and on some occasions boats passed between the island and the east bank of the river, although the main channel of the river was unquestionably on the west side of the island. The east bank of the river opposite to Boom island was somewhat abrupt, and a little higher than the island, and the island was covered with a growth of small timber. Since then, however, the channel between the island and the east bank has been gradually filled up by sawdust and sediment, so that, when the river is very low, it is sometimes possible to walk from the east bank of the river to the island at its north end; but usually there is some flow of water through the slough, and, when the river is high, a considerable volume of water still flows between the island and the mainland. Moreover, between the land which is now owned by the plaintiff on the east bank of the river and the south end of the island there is a stretch of water which is usually from 75 to 80 feet wide that can only be crossed with a skiff or boat. On October 24, 1854, after the fractional part of township 29 N., of range 24 W., which lies on the west bank of the Mississippi river, had been surveyed, Herman Saunders entered the island, which was first disclosed by that survey, and is now known as "Boom Island," in the public land office, and received a patent therefor on May 3, 1859. In said patent Boom island is designated as "lot numbered two of section fourteen, lot numbered four of section fifteen, lot numbered one of section twenty-two, and lot numbered eight of section twenty-three, in township twenty-nine north, of range twenty-four west, in the district of lands formerly subject to sale at Stillwater, now Cambridge,

Minnesota, containing six acres and ninety-four hundredths of an acre, according to the official plat of the survey of said lands returned to the general land office by the surveyor general." It is under this latter patent to Saunders that the defendant company holds possession and deraigns its title.

The plaintiff lays claim to Boom island on the ground that the failure of the government surveyors to disclose the island by the survey made prior to March 25, 1849, to which reference was made in the patent to Bottineau, estopped the United States, after the grant to Bottineau, from thereafter surveying the island or asserting a title thereto. The plaintiff claims that the island, being undisclosed by the first survey, passed to Bottineau by virtue of his patent; that, by failing to plat the island, the government surveyors in effect declared that it was of no value, and of no more importance than an equivalent portion of the bed of the stream; and that the riparian proprietors on the east bank of the river are therefore entitled to claim such parts of the island as lie on their respective fronts, precisely as they might claim it if it was an accretion formed in front of their respective properties by the action of the currents of the river since the survey was made. It may be conceded to be the general rule that where a government survey along the banks of a navigable stream is made, and the banks of the stream are meandered, but the survey fails to disclose a small island contiguous to the shore, the riparian proprietor holding the adjacent shore land under a grant from the government is entitled to such land as appurtenant to the grant. This rule rests upon the ground that the failure to survey small islands contiguous to either shore is evidence of an intent on the part of the government to surrender all claim thereto in favor of the adjoining riparian proprietors. Railroad Co. v. Butler, 159 U. S. 87, 15 Sup. Ct. 991; Butler v. Railroad Co., 85 Mich. 246, 48 N. W. 569; Middleton v. Pritchard, 3 Scam. 510, 520; Hardin v. Jordan, 140 U. S. 371, 11 Sup. Ct. 808, 838. But as the rule last mentioned for the construction of grants is founded upon the presumed intent of the government to relinquish its title to islands which are contiguous to the bank of a stream, and are not surveyed or platted, the rule in question ought not to be applied when the circumstances are such as to rebut that presumption. If, when the bank of a stream is surveyed and meandered, good reasons exist for not indicating on the survey the existence of an island contiguous to the shore, the mere failure to indicate it ought not to be given the effect of divesting the government of its title thereto. In the case at bar we think that reasons did exist when the first survey was made for not platting Boom island, and that they are sufficient to overcome the presumption, which would otherwise arise from the survey, that the government intended to relinquish its title to the island. It has already been shown that the survey to which reference was made in the Bottineau patent was neither a complete survey of the river nor a complete survey of township 29 N., of range 24 W., because a considerable portion of the township was on the west bank of the river, in what was then Indian country. Furthermore, it will be observed by reference to "Exhibit E" that four of the sections of the township,

to wit; sections 14, 15, 22, and 23, cornered on the island about in the center thereof, two of which sections were in the fractional part of township 29, which was surveyed in the year 1853, after the Indian title thereto had been extinguished.   When the survey of the township was completed, Boom island was duly surveyed and platted, and shortly thereafter the land forming the island was exposed for sale, and was sold to Hiram Saunders, under whom the defendant claims. It is fair to infer from these facts that the surveyors who made the first survey of a fractional part of the township on the east bank of the river omitted Boom island from the plat of that survey, because a part of the island lay in sections of the township which could not at that time be surveyed.   It is most probable that they did not survey and plat the island, because they did not deem it expedient to do so until the residue of the township lying west of the river was surveyed and platted.   In view of all the circumstances of the case, and in view of the fact that the government, as early as 1853, caused the island to be surveyed, it is most likely. we think, that the government surveyors omitted to note the location, contour, and area of the island on the first plat, for the reasons last suggested, rather than for the reason that they deemed the island of no importance, and properly appurtenant to shore land which fronted the island.

In further support of the view that the facts in the case do not warrant an inference that the government intended to relinquish its title to Boom island when it made the first survey, it may be said that the evidence contained in this record fails to show that Bottineau or any of those claiming under him, except the plaintiff, ever took possession of Boom island as appurtenant to the grant, or asserted a title thereto under the patent of March 25, 1849.   They appear to have recognized the government's right to survey the island as a part of the public domain subsequent to the date of that patent, as well as its right to sell the land to Saunders; for, so far as the evidence shows, they never took any steps, until the present suit was filed, to challenge the survey or patent, or to prevent a sale.   The conduct of Bottineau, and those claiming under him, for more than 40 years, has been in the nature of an admission that the claim made by the government in 1853, that Boom island was still a part of the public domain, was a lawful claim.   In this latter respect the case at bar differs essentially from the case of Railroad Co. v. Butler, supra, on which much reliance was placed on the argument by the plaintiff's counsel.   In that case a survey of land on the river bank which failed, as in this case, to disclose an island contiguous to the shore, was made in 1831; and the land on the bank was entered by those under whom the plaintiffs claimed, in the following year,—1832.   In the year 1837 the opposite bank of the river was also surveyed, and certain islands in the river were disclosed and surveyed; but the one in dispute was not then surveyed or disclosed, and no survey of said island was made until 1855.   When the government patented the island in controversy to a third party under the survey made in 1855, and the grantee filed his patent for record, the plaintiffs, opposite to whose land the island lay, immediately commenced a suit to cancel and annul the patent as a cloud upon their title.   In that case

there was no pretense that the riparian proprietors ever acquiesced in the claim made by the government that the island remained public property, notwithstanding the first survey; while in the case at bar the evidence indicates such acquiescence for at least 36 years,— that is to say, since the island was patented to Saunders, on May 3, 1859. Without pursuing the subject at any greater length, it is sufficient to say that, upon the state of facts disclosed by the evidence, we think that the circuit court did right in instructing the jury, at the close of all the evidence, to return a verdict for the defendant company; and the judgment entered upon said verdict is therefore affirmed.