CYRUS WEBBER v. J. A. AXTELL and Others.[1]

March 24, 1905.

Nos. 14,213—(77).

**Riparian Rights on Inland Lake.**

On an inland body of water which was a navigable lake under Lamprey v. State, 52 Minn. 181, a shore owner acquired from the United States four meandered lots. Fifteen rods from these lots, between the same and the center of the lake, was an island which was not surveyed or reserved to the government when the patent was issued. Several years afterwards other parties caused this island to be surveyed, and obtained a patent therefor from the United States. A controversy arose between the claimants under the two patents for possession of the property which was litigated in this suit. At the time it was commenced, accretions had established a sand bar between the island and the property of the shore owner. *Held*, upon findings showing these facts:

1. That the riparian rights of the first patentee vested in him a contingent interest in all relictions and accretions by change of the water line, which included the island in question at the date of the patent from the government.

2. That the first patentee could not be deprived by the later patentee of such vested interest.

3. That the evidence in this case was not sufficient to show that the first patentee had estopped himself from asserting his title as against the second patentee.

[1] Reported in 102 N. W. 915.

Action of ejectment in the district court for Martin county. The case was tried before Quinn, J., who found in favor of plaintiff. From an order denying a motion to amend the conclusions of law and denying a new trial, defendants appealed. Affirmed.

*C. M. O'Neill, Albert R. Allen* and *De Forrest Ward,* for appellants.

Fox Lake is a navigable lake; public, as distinguished from private waters. Lamprey v. State, 52 Minn. 181. Being public waters, plaintiff's title to the shore lands extends only to low water mark, and does not include the island. Railroad Co. v. Schurmeier, 7 Wall. 272; Lamprey v. State, supra; Brisbine v. St. Paul & S. C. R. Co., 23 Minn. 114; Union Depot, St. Ry. & T. Co. v. Brunswick, 31 Minn. 297; Village of Wayzata v. Great Northern Ry. Co., 50 Minn. 438; Security L. & Exp. Co. v. Burns, 87 Minn. 97; Carli v. Stillwater St. Ry. & T. Co., 28 Minn. 373; Hanford v. St. Paul & D. R. Co., 43 Minn. 104.

Since the lake is navigable, and at the time the original government survey was made in 1857 the island in question was a true island (as to which the original plat, the field notes and survey are conclusive) or in other words, since the island was not included in the original survey, plaintiff took no title to the same. Both parties, the government and the patentee, are bound by the patent and the plat. Collins v. Asheville, 128 N. C. 563; Jones v. Johnston, 18 How. 150; Executors v. Hollister, 18 Vt. 294; 13 Cyc. 548, 549; Noonan v. Lee, 2 Black, 499; Slauson v. Goodrich, 99 Wis. 20; 3 Washburn, Real Prop. 460; Tiedeman, Real Prop. § 841; 1 Warvelle, Vendors, § 375; Cunningham v. Village of Willow River, 68 Minn. 249; St. Paul, S. & T. F. R. Co. v. First Division, 26 Minn. 31; Lamprey v. State, supra; Borer v. Lange, 44 Minn. 281; Reed v. Lammel, 28 Minn. 306.

*Knox, Faber & Knox,* for respondent.

In this state the rule of the common law as applied to rivers above tide water has been fully adopted and extended to our inland lakes, with this modification, viz.: That where such rivers and inland lakes are in fact navigable either for commercial purposes or pleasure, the waters belong to the public to low-water mark and the title of the owner is held to extend only to such low-water mark; but in all other

respects the rule of the common law is recognized and followed, and the riparian owner in such streams and lakes is accordingly held to be the owner of all accretions, and of all land left dry by the recession of the waters, and of all islands to the thread or center of the stream. Lamprey v. State, 52 Minn. 181; Railroad Co. v. Schurmeier, 7 Wall. 272.

Meander lines are never boundaries, and the purchaser of land from the government which is meandered upon a body of water is not bound by the meander line between such meandered land and the water, but takes to the water. The title to the soil in fresh-water streams and lakes which can be navigated, including all intervening islands, is vested in the riparian owner subject to the public easement of navigation. Tiedeman, Real Prop. § 835; Schurmeier v. St. Paul & Pac. R. Co., 10 Minn. 82 (102); Lamprey v. State, supra; Chandos v. Mack (Wis.) 10 L. R. A. 207; Hardin v. Jordan, 140 U. S. 371; Olson v. Thorndike, 76 Minn. 399; Everson v. City of Waseca, 44 Minn. 247.

A patent issued by the United States passes the land not only as it was. at the time of the survey, but as it was at the date of the patent. Jefferis v. East Omaha Land Co., 134 U. S. 178. The riparian or shore owner, as such, is the owner of all unsurveyed islands between the shore line and the thread or center of the stream or lake. Schurmeier v. St. Paul & Pac. R. Co., supra; McCullough v. Wall, 4 Rich. Law, 68; Middleton v. Pritchard, 3 Scam. 510; Hardin v. Jordan, 140 U. S. 371; Chandos v. Mack, supra; Mitchell v. Smale, 140 U. S. 406.

To constitute an estoppel in pais the party estopped must be guilty of actual fraud or such culpable negligence as would operate as a fraud upon the opposite party. 11 Am. & Eng. Enc. (2d Ed.) 421; Bigelow, Est. (5th Ed.) 569; 2 Pomeroy, Eq. Jur. (2d Ed.) § 806; Pence v. Arbuckle, 22 Minn. 417; Hawkins v. Methodist Episcopal Church, 23 Minn. 256.

LOVELY, J.·

Plaintiff in this action seeks to recover an island in one of the smaller lakes of Martin county, about fifteen rods distant from four government lots which he entered and patented under the homestead laws

of the United States. The cause was tried to the court, who, upon findings of fact, held as a conclusion of law that plaintiff was entitled to judgment declaring him to be the owner of the land in suit, and ordered judgment in his favor. This appeal is from an order denying amended findings and for a new trial.

We are of the opinion that this cause must be determined upon the facts as found by the court, but it is necessary to premise, before calling particular attention thereto, that the original survey of township 103, range 32 (Martin county), was made by the United States in 1857, that partly located in this township is a small meandered body of water about three and a half miles in length and one-half or three-fourths of a mile in width, known as Fox Lake, on the northwest shore of which is located a tract of land surveyed and platted by the government as lots 2, 3, 5, and 6 in section 31, town 103, range 32. About fifteen rods from the shore of this lake, and opposite the government lots referred to, is the tract of land in controversy. In making the original survey it was marked on the plat and indicated in the field notes as an island containing two acres, with good timber of oak, ash, and hackberry; but no actual survey was at that time made of such island, nor was it designated in any way as a specific part of the public domain, nor was there any indication on the plat that it was reserved as a part thereof. In 1865 plaintiff settled upon and entered lots 2, 3, 5, and 6 as a homestead, and then claimed that this so-called island was a part thereof; and the evidence supports the view that he occupied it as such until the fall of 1885, when, upon the application of a third party, one McConville, the United States caused the alleged island to be surveyed, platted and designated it as lot 10, then accepted McConville's entry. McConville made some improvements on the land, but did not continue his settlement, when, in 1887, one Rice made an entry to this tract under the homestead laws.

February, 1873, a patent was issued to the plaintiff for lots 2, 3, 5, and 6, and in 1891 a patent was issued to Rice for lot 10, being the so-called island, which had by recession of the water grown in size considerably. The defendants claim under Rice's entry by purchase. During a considerable portion of the time after Rice made his entry, the so-called island was occupied either by him or his tenants, and the question of adverse possession was litigated by the defendants

under this contention. The substantial basis of plaintiff's claim to the land in controversy, however, rests upon the asserted rights accruing to him under his homestead entry of 1865. Defendants claim the island under Rice's entry and the patent issued to him in 1891. It is likewise insisted in defendants' behalf that, by the acts and representations of plaintiff himself, he is now estopped from asserting any interest therein.

The material facts above stated we do not regard as open to dispute, but at the trial evidence was received to show that from the time plaintiff settled upon his homestead there were attached to the so-called island (lot 10) two sand bars which at ordinary stages of water permitted access to it by teams at certain periods of the year, and it was found by the court, when the suit was brought, that the shore where plaintiff's lots were situated was connected with such island in times of ordinary low water by this means, and in times of high water submerged. This was contested. The claim that defendants held under adverse possession was clearly a question of fact, and the court held, upon sufficient evidence to justify its findings in this respect, that it had not been established. The court also declined to hold, upon application for amended findings, that the plaintiff was estopped from asserting his title to the land in controversy.

Had the trial court determined as a matter of fact that at the time of the patent to plaintiff either one of the sand bars referred to connected the island with the shore line of his lots, there could be no doubt but that it would be our duty to hold that the decision of this case would be controlled by Schurmeier v. St. Paul & Pac. R. Co., 10 Minn. 59 (82), wherein it was held that the water, instead of the meander line, must be regarded as the proper boundary of such tract. The decision of this case was sustained by the Supreme Court of the United States on writ of error (Railroad Co. v. Schurmeier, 7 Wall. 272), where it was decided that the meander lines on fractional tracts adjacent to public waters are designated in the field notes, not as boundaries, but for the purpose of ascertaining the quantity of land in the fraction, and also that the riparian owners retain their rights to construct suitable landings, wharves, etc., for the convenience of commerce and navigation, to the same extent as such proprietors on navigable streams affected by the ebb and flow of the tide at common law.

But counsel insist that the facts as found by the trial court indicate that it did not give decided or sufficient significance to the time when the sand bars appeared between the plaintiff's lots and the island, and that such bars should have been formed previous to the commencement of the suit, and have been existing when plaintiff received his patent, to bring plaintiff's rights within the benefit of the Schurmeier case. Counsel argues that since the court did not find that the sand bars existed before the suit was commenced, or before the subsequent survey and patent to Rice in 1891, therefore the patent to the latter could not cut off the rights of Rice or those claiming under him. The decision in the Schurmeier case, both in the state and federal courts, impresses us very strongly that it was the accepted view that the riparian rights of the first proprietor vested in him a contingent interest in all accretions and relictions, which would necessarily involve the sand bars and adjacent island; for, if it be true that the right of the shore owner in a body of navigable water carries with it a dependent interest to accretions and relictions, which became established at the time of his patent, an attempt on the part of the government to interfere with such rights afterwards would be ineffectual to take from him such right or interest. See cases cited in Sage v. Rudnick, 91 Minn. 325, 98 N. W. 89, 100 N. W. 106.

There has been much discussion as to the distinction between navigable and nonnavigable lakes, so called, which arises from the relative rights of the public and shore owners to use the waters therein; but if Fox Lake was a navigable body of water, as must be conceded, the shore owner became vested with a contingent interest in such accretions as might be added to his land, which would follow as an incident thereto, and became his property. If the island between the shore and the center of the lake when the patent was first issued was unsurveyed, without any expressed intention on the part of the government to treat it as a portion of its dominion, it would accrue to plaintiff. We are very clear that this rule has been laid down in the case of Lamprey v. State, 52 Minn. 181, 53 N. W. 1139, where the distinction between navigable and nonnavigable lakes is considered and defined, and where it was held that the shore owner of a navigable stream or body of water is entitled to the riparian right of accretions, even though larger than the parent estate, which is an incident to all riparian ownership, and

that this rule rests upon the broad principle that, to preserve the fundamental riparian right, viz., access to the water, upon which all others depend, and may constitute its principal value. This establishes the contingent interest to such accretions as would include the sand bars and appurtenant island in this case.

The reasons for this view are fully considered and discussed in Lamprey v. State, supra, and, applying the rule there laid down to the fact that as to this small island, at the time of the government survey and patent to plaintiff, the government of the United States made no claim, but treated it as the bed of the lake, which belonged to the state, subject to the rights of riparian owners, it fully sustains the learned trial court in the conclusion that plaintiff's interest became vested at the time of his patent, and established his ownership thereto.

It was insisted on the argument that plaintiff had estopped himself from asserting his title to the property in question by reason of the fact that Rice was led to make his entry by plaintiff's advice and representations. The court declined to find, at the request of counsel, that plaintiff had estopped himself in this respect, and we are of the opinion that the evidence did not require such a finding. It appeared that plaintiff had, for several years after his occupation of the shore lots, occupied the land in question for pasturage, had fenced it, and continued to treat it as an appurtenant to the land he had entered until 1885, when one McConville had it surveyed and attempted to establish a resort on the island. The claim of McConville was contested by Rice, which resulted in the entry made by the latter. The facts regarding the situation were open to all parties, and while plaintiff showed partiality to Rice over McConville, and went to the land office with Rice as his witness, yet it does not appear that he gave Rice to understand that he would yield his own claim to the property or intended to do so. There is no evidence whatever upon which to base a finding that Rice was deceived or misled as to the facts upon which his ownership to the property could rest. Neither was there any renunciation of plaintiff's interest therein, nor that Rice was induced by any fraudulent act or misrepresentation to part with anything which he possessed or had acquired; also that in the struggle for the property Rice knew what plaintiff's rights were, and acted accordingly.

Other assignments of error are unimportant, and need not be considered.

Order of the trial court is affirmed.

LEWIS, J. (dissenting).

The decision is based upon the ground that the plaintiff, as riparian owner, was, by virtue of his patent, vested with a contingent interest in all relictions which might be subsequently developed.

According to the findings, it must be conceded that at the time of the second survey in 1885 the island had not become connected with the mainland by formation of the sand bar, although the lake had been falling gradually for several years. At the time his patent was issued, plaintiff acquired no right, title, or interest in the island upon any theory of the law. This is not within the doctrine of the Schurmeier case, for the reason that prior to 1885 there was a well-defined open and navigable portion of the lake between the shore and the island, and defendants' title vested before plaintiff's accrued. Plaintiff was not the owner at that time under the principles announced in the Lamprey case, for the reason that, the lake being navigable, his line of ownership was limited to the water's edge, and his title as riparian owner by reliction and accretion did not accrue in time to avail him.

I do not concur in the views upon which the decision rests, viz., that the riparian owner acquired with his patent to the shore land a contingent interest in and to the island, based upon the possibility that at some future time, either by the action of or the recession of the waters, the island would become connected with the mainland, regardless of other rights subsequently acquired. In stating the general principles with reference to the title to such bodies of water, it is said in the case of Lamprey v. State, supra: Where a meandered body of water is in fact nonnavigable, the patentee of the land bordering on it takes to the middle of the lake, and, where the lake is navigable in fact, its waters and bed belong to the state in its sovereign capacity, and the riparian patentee takes the fee only to the water's edge, but with all the rights incident to riparian ownership of navigable waters, including the rights of accretions formed or produced in front of his land by the action or recession of the waters; that such riparian

rights rest upon the title to the bank or shore, and not upon the title to the soil under the water.

The only theory which seems at all debatable to justify the views of the majority as to a contingent interest is that the government released and abandoned all claim to the island by not having originally surveyed it, although it was designated as an island on the plat and was mentioned several times in the field notes. It may have been considered too small to warrant a survey, but how does that fact indicate an intention on the part of the government to relinquish all title in favor of the shore land? If we are to adhere to the doctrine that the riparian owner is limited to the shore line of navigable waters, with the incidental right of access, etc., I am unable to see upon what theory the government should be held to have abandoned its claim to the island in question merely because it was not included in the original survey. And, if such was the effect at that time, the government afterwards asserted its claim, had the island surveyed, and recognized the title of defendants' grantors. At the time the government so took possession of the island in 1885, had it surveyed, and permitted defendants' grantors to take possession and acquire title thereto, plaintiff had never asserted any right, title, or interest therein. The island in no manner originally entered into the computation to make up the number of acres applied for by him as a homestead. It was never treated either by him or the government as a part of his original claim.

On the other hand, as the evidence discloses, for a number of years plaintiff had acquiesced in the subsequent assertion of title by the government and those who settled thereon. While such acquiescence may not in law amount to an estoppel, it indicates very fully that up to that time, at least, plaintiff never asserted upon any ground whatever that he was entitled to the same. As bearing upon the question of title to islands under similar circumstances, the following cases may be considered: Steinbuchel v. Lane, 59 Kan. 7, 51 Pac. 886; People v. Warner, 116 Mich. 228, 74 N. W. 705; Bonewits v. Wygant, 75 Ind. 41; Harding v. Minneapolis Northern Ry. Co., 55 U. S. App. 257, 84 Fed. 287, 28 C. C. A. 419. The last-named case was one involving title to a part of an island in the Mississippi river at Minneapolis, and has an important bearing upon the question under discussion. My

view is that, if the government claimed the island before it was acquired by plaintiff by recession of the waters, and defendants' grantors acquired title direct from the government before the alleged contingent interest in plaintiff became vested, they cannot be divested simply because subsequently a sand bar appeared, connecting the island with plaintiff's land.

A new trial should be granted.