## SARAH C. BARNEY v. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY.[1]

April 30, 1926.

No. 25,199.

**Deed construed as grant of easement.**

    1. A deed gave a city the right to permit "one or more railroads to be laid, built and operated upon and across" described premises. *Held* to be a grant to the city of an easement for the public benefit and the purposes stated, railroads being public highways.

**Order of trial court for judgment affirmed.**

    2. Decision limited and order affirmed without prejudice to plaintiff's claim of ownership of the fee.

    Dedications, 18 C. J. p. 110 n. 22; p. 111 n. 24.

[1] Reported in 208 N. W. 821.

Action in the district court for Blue Earth county to determine adverse claims. The case was tried before Comstock, J., who ordered judgment in favor of defendant. Plaintiff appealed from an order denying her motion for a new trial. Affirmed.

*C. O. Dailey,* for appellant.

*R. L. Kennedy, William T. Faricy, G. F. Dames, Lorin Cray* and *C. J. Laurisch,* for respondent.

STONE, J.

Action to determine adverse claims which resulted below in findings and order for judgment for defendant. Plaintiff appeals from the order denying her motion for a new trial.

The tract in question is quadrangular in shape and on the east bank of the Minnesota river in Mankato. Adjoining on the east are the mainline tracks of defendant and the union passenger depot. The Minnesota river at this point runs somewhat east of north and the railroad tracks are roughly parallel. Those of defendant are for the most part on ground which concededly it has a right to occupy. It has extended the use of ground opposite the passenger depot and between its tracks and the river so far as to encroach upon land which plaintiff claims it has no right to use and which belongs to her. That alleged encroachment is the occasion for this action.

The property is a part of that involved in Village of Mankato v. Willard, 13 Minn. 1 (13), 97 Am. Dec. 208. That also was an action to determine adverse claims and resulted in the confirmation by the decree, affirmed here, of a common law dedication of a levee or public steamboat landing. The Minnesota river was then a real highway of commerce and Mankato the head of navigation. Defendant claims by grant or license from the city of Mankato, which is the village of Mankato reincorporated. Plaintiff claims under Willard and Barney, the defendants in the former action. In 1875 steamboat navigation of the Minnesota river was at an end and the day of the railroad had arrived. One result of that evolution was a final adjustment between Willard and Barney and the city of Mankato of the old controversy over the levee. Under date of April 5, 1875,

the city "released and relinquished" ("as a levee or other public grounds"), to Willard and Barney, all the old levee between Front street and a line parallel with and 130 feet west thereof. The 130 foot strip so described, two blocks long, was on the east side of the levee and farthest from the river. It was then being platted as "The Willard & Barney Exchange," the deeds of April 5, 1875, reciting the plat and its approval by the city council.

On the same day and as part of the same transaction, Willard and Barney executed and delivered to the city the deed upon which we base this decision. It recited the probable future necessity of laying out certain streets over the Willard & Barney Exchange and between that parcel and the river and also that "said city may desire to authorize one or more railroads to be located, laid and built" upon the ground between the exchange and the river. So they proceeded to "grant, assign and quitclaim" to the city "the right and privilege" of extending three old east and west streets to the river and of opening a new north and south street "running parallel with said Front Street" along the west line of the exchange.

The deed further provided as follows:

"The said city of Mankato shall have the privilege to authorize one or more railroads to be laid, built and operated upon and across said premises between said street and the Minnesota River, but in no case shall said city authorize any railroad to be laid upon said grounds, so that any portion of the track shall be nearer than seventy feet distant from said platted grounds, and being Two Hundred feet distance from said westerly line of Front Street, nor occupy any portion of said grounds nearer than sixty feet distant from said platted grounds.

"And the said city of Mankato is hereby forever released from the payment of any damage to the said parties of the first part, their heirs or assigns, for the right of way and privileges herein granted."

The new north and south street, provided for by this deed, is now Exchange street. The Willard & Barney Exchange, two blocks long, was platted with lots 130 feet deep, extending from Front street on the east to Exchange street on the west. Immediately

west of Exchange street are the railroad tracks and passenger depot, all on the old levee. Two mainline tracks are west of the depot and between it and the river. Passing and industry tracks run east of the depot and between it and Exchange street. In that situation it is interesting to observe that there has never been any formal relinquishment by the city or the public of the right of the latter to use the premises *west* of Exchange street as a levee. That right was confirmed by the decree in Village of Mankato v. Willard, supra. The deeds of April 5, 1875, went no farther than to relinquish, and only so far as the city had the right to relinquish, the rights of the public in that portion only of the old levee which lay *east* of Exchange street. Those deeds nowhere enlarged the rights of Willard and Barney in that portion between Exchange street and the river. In making that statement we do not overlook a provision of the deed which contemplated the possibility of extending the lots in the Willard & Barney Exchange to a greater depth than 130 feet. But they were platted at 130 feet and no more. Exchange street has been laid out along their west end and has been their boundary on that side for over 50 years. Whatever right may have existed in 1875 to extend those lots to a greater depth than 130 feet was irrevocably lost long ago.

But notwithstanding the absence of any formal relinquishment of the original rights of the public, its use of the land for other than railroad purposes ceased so long ago that it may now be put out of view. The one present issue goes to the use by defendant of a portion of the old levee property which lies between Exchange street and the river. Defendant, so far as it is using any portion thereof, is doing it for railroad purposes and under a license or grant from the city.

The deed from Willard and Barney granted unequivocally to the city the "privilege to authorize one or more railroads to be laid, built and operated upon and across said premises." The only restriction is one intended to keep the railroad tracks on the west side of Exchange street where they now are. So we have a clear grant to the city of the right to authorize "one or more railroads to be

laid, built and operated" on the premises in question. The language is too clear to be the occasion of serious question. The grant, now confirmed by the doings of 50 years, was of an easement to the city for the benefit of the public, a right-of-way for as many lines of railway as might desire to use and could get from the city the right to use it.

If it were true that the city had no legal authority to hold property for railroad purposes, plaintiff would be in no position to question the taking of this easement under the deed of 1875, by the terms of which she is bound. The estoppel would be clear. Aside from that, in the absence of the unauthorized expenditure of public funds, it is at least doubtful if the ownership of the property could be questioned by other than state authority. But that question is not in the case for the right of the city to take, hold and, within proper limits, to control the use of such an easement is clear. Mankato was originally incorporated as a city under chapter 27, p. 109, Special Laws of 1868. By section 9 of chapter 10 of that act it was given the power to "purchase and hold real and personal estate for public purposes, sufficient for the convenience of the inhabitants thereof." Under section 69 of its present Home Rule Charter, the city may acquire "by purchase, condemnation or otherwise * * * such lands * * * as may be necessary for the establishment, maintenance and operation of any public utility, or to provide for and effectuate any other public purpose."

The argument for plaintiff overlooks the fact that railroads are public highways and that property devoted to railroad use is devoted to public use. With us "the railroads have from the very outset been regarded as public highways." Wisconsin, M. & P. R. Co. v. Jacobson, 179 U. S. 287, 21 Sup. Ct. 115, 45 L. ed. 194. In fact many of the early railroad charters granted in this country were framed upon the idea that railroads would be toll roads open to the use of all persons who might care to operate thereon with their own locomotives and cars, the owning company having the right to erect toll houses and collect tolls, control the construction of the wheels, form of cars and carriages and such other matters

as might require uniform regulation in the interest of all users. The speedily "ascertained impracticability of the general and indiscriminate public use of these great thoroughfares" led to the abandonment of the original idea and the substitution of our present monopolistic use of railroads by their owners or lessees. These historical facts were most interestingly stated by Mr. Justice Bradley in Lake Superior & M. R. Co. v. U. S. 93 U. S. 442, 23 L. ed. 965.

It has been held competent for city authorities to devote to the use of a passenger depot a portion of a common which had been dedicated for the advancement of the interests of the town. Crawford v. Mobile & G. R. Co. 67 Ga. 405. In Portland & W. V. R. Co. v. City of Portland, 14 Ore. 188, 12 Pac. 265, 58 Am. Rep. 299, it was ruled that the placing upon a public landing of a railroad track and depot was not a destruction of the public use as a landing but added to its efficiency, and that in consequence a license to construct the track and depot did not exceed the legislative power. See also State ex rel. v. Dreyer, 229 Mo. 201, 129 S. W. 904, holding that while railroad use of a levee must be subsidiary and subservient to the requirements of river traffic, it was not an inconsistent use nor a diversion of the trust. But it was held here in Schurmeier v. St. P. & P. R. Co. 10 Minn. 59 (82), 88 Am. Dec. 59, that the use of a dedicated steamboat landing for a railroad track is not such a use as the dedication contemplated or authorized. We are not running counter to that holding now because the railroad use here in question is authorized by deed.

Argument is unnecessary to show that railroads and their terminals are necessary for the public good. This old levee property is serving the public as a railroad right-of-way and terminal in much the same way it did when it was used for river traffic. That evolution was in progress when the transactions evidenced by the deeds of April 5th, 1875, were consummated and the purpose is fairly clear to substitute, to the extent indicated, for the old use of river traffic the new and equally public use of railroad transportation. The location of a union passenger depot upon another portion of the old levee may not have been contemplated then, but there is significance in its having come to pass.

The case was tried and has been presented here in such manner as not to require any determination of the west boundary of the strip of the old levee which the city may devote to railroad use. See Schurmeier v. St. P. & P. R. Co. supra, and St. P. S. & T. F. R. Co. v. First Div. of the St. P. & P. R. Co. 26 Minn. 31, 49 N. W. 303. Neither are we required to pass upon plaintiff's claim of ownership in fee, for if she is the fee owner her title is still subject to the easement granted to the city for railroad purposes. The question has been argued but, for reasons which we have already attempted to make clear, its decision is not necessary to a final disposition of this case.

One of the assignments of error challenges the decision below because it treated the judgment in Village of Mankato v. Willard, supra, as having "determined" that certain of the judge's deeds (executed in accordance with the Act of Congress approved May 23, 1844, entitled "An act for the relief of the citizens of towns upon the lands of the United States, under certain circumstances" and chapter 7 of the Laws of Minnesota of 1855, which was "An Act prescribing rules and regulations for the execution of the trust arising under the act of Congress" aforesaid), under which Willard and Barney claimed title, and upon which in consequence plaintiff's title must depend, were in effect void and "a cloud upon the interests of the public" in the land in question "and decreeing that said deeds be produced and delivered up to be cancelled." We cannot construe the *judgment* in question as having gone that far. The learned trial judge was correct to the extent that among the "matters of law applicable to the facts of the case" his predecessor, Honorable Horace Austin, in Village of Mankato v. Willard, included the following:

"Third: That the said Robert Wardlaw was never, in contemplation of law, an occupant of the said townsite nor any part thereof, and consequently, was never entitled to be a recipient of the trust or of any benefit arising therefrom or thereunder.

"Fourth: That the defendants, claiming as they do under said Wardlaw, stand in no better condition, and are not and never were

entitled to a conveyance of the said premises, or any part thereof from the trustee."

If the decree had gone that far, plaintiff, who also claims through Willard and Barney under Robert Wardlaw, would find therein an insurmountable obstacle to her claim of ownership in fee. But Judge Austin immediately after his two findings above quoted went on with an order for judgment reading in part as follows:

"As it is not material to plaintiff who owns the fee in the disputed premises, only that the public easement be established and declared against all concerned. I think that relief cannot be granted to the extent demanded in the complaint; that the question as to who is the owner of the fee should be left to the settlement between parties who claim it, and that the decree of the court should not go beyond a perfect protection of the plaintiff's rights.

"It is therefore ordered that the defendants, their agents and attorneys, and all persons claiming any interest in or right to said premises, through them or either of them, do forever refrain from obstructing or in any wise interfering with the free and unrestricted use by the public of the premises in question as a public levee or landing."

That order was followed by a judgment which, disregarding its recitals, went only to the extent of confirming the public easement for levee purposes and enjoining the defendants and all persons claiming under them from interfering with the proper use of that easement.

Clearly it is not necessary to construe that judgment now with respect to its effect upon plaintiff's claim of fee ownership for, as already appears, the right of defendant to its use of the property in question is derived from the city of Mankato under the easement acquired by the latter by deed from plaintiff's acknowledged predecessors in title. And, while the findings of fact in the instant case are to the effect above stated, the order for judgment does not go beyond denying plaintiff any relief against defendant and determining that she has no right, title or interest in the property adverse to the right of defendant to its possession, use and occu-

pancy for railway purposes and deciding finally that defendant has the perpetual right of possession, use and occupancy of the same for railway purposes or "of so much thereof as the city of Mankato has heretofore allowed or may allow from time to time." So self-limited the decision under review does not prejudice plaintiff's claim of fee ownership. So construed it is clearly right and must be and is affirmed.

The assignments of error require no further discussion. They have all been considered, particularly one to the effect that certain deeds heretofore procured by defendant from plaintiff's predecessors in interest created an estoppel. The elements of estoppel are lacking. Even if anything in those deeds could be considered as representations by defendant, plaintiff does not claim to have acted or to have refrained from acting on the faith of them.

Order affirmed.