## JOHN F. FITZPATRICK AND OTHERS v. LILLIAN N. BERTHEL AND ANOTHER.[1]

March 1, 1929.

No. 27,163.

*Patrick J. Ryan,* for appellant.

*John F. Fitzpatrick,* for respondents.

[1]Reported in 223 N. W. 767.

Holt, J.

Defendant Lillian N. Berthel appeals from the order denying a new trial.

In condemnation proceedings by the city of St. Paul to acquire land in section 4, township 28, range 22, for a barge terminal, there was an award of $6,352 for the land of which plaintiffs claim to own a two-thirds interest. Defendant asserts ownership of part of the same land, for which part the compensation awarded was $3,011. The city has deposited $6,352 with the clerk of court. Plaintiffs bring the suit against Amelia C. Messer, Lillian N. Berthel and the city of St. Paul for two-thirds of the money deposited, alleging that defendants have no right, title or interest in or to such money. The facts were mostly stipulated. The award was

"To Amelia C. Messer for life, remainder to Lillian N. Berthel, government lot 6, section 4, township 28, range 22, $3,011; John F. Fitzpatrick, one-third; Donald W. Taylor, one-sixth; Gilbert M. Taylor, one-sixth; William S. Dwinnell, one-third, that part of government lot 5, in section 4, township 28, range 22, that lies west of the St. Paul Bridge and Terminal right of way $3,341."

In 1847 the government surveyed the land on the east side of Mississippi river in Ramsey county. Near the Mounds where the river bends from a northeasterly course to a southerly is section 4, the river passing through so that only the part of section 4 situate on the left bank of the river, going down stream, was covered by the 1847 survey of the United States filed in 1848, of which lot 5 was the most southerly part. In 1849 George Courneyer entered lot 5, and in August, 1853, he received patent thereto. Plaintiffs and Dwinnell showed title to lot 5 from the patentee. The United States in 1852 ordered a second survey, which was made and filed 1854, showing lot 6 of section 4 as an island separated from the shore and lot 5 by a narrow channel. The court found upon the evidence adduced "that there was no such channel and no island and that the land included in said lot 6 was part of the river bank outside of the meander line of lot 5." That part designated lot 6 has never been occupied. In 1889 the United States issued a patent

to lot 6 to Jasper N. Loofbourrow, and by mesne conveyances appellant has succeeded to his title. The conclusion of law was that plaintiffs were entitled to two-thirds of the whole amount of $6,352, and that appellant was entitled to no part. This conclusion rests on the ground that the patent to lot 6 conveyed nothing, because the same land had already been patented to George Courneyer through whom plaintiffs claim.

The appellant cannot prevail unless the finding that there was no channel between lot 5 as surveyed in 1847 and lot 6 of the survey of 1854 is shown to be without sufficient support. Irrespective of the accuracy of the meander line, fractional government lots abutting meandered lakes and rivers include all land to low water mark. Schurmeier v. St. P. & P. R. Co. 10 Minn. 59 (82), 88 Am. D. 59, affirmed, 7 Wall. 272, 19 L. ed. 74; St. P. S. & T. F. R. Co. v. First Div. St. P. & P. R. Co. 26 Minn. 31, 49 N. W. 303. The same two surveys involved in the cases cited are here involved. Hence if there was no channel separating what the second survey designates as lot 6, or an island from the main land, the patent of lot 5 covered the land to the river. It is true, the testimony as to conditions 40 years ago are not as reliable as if there could have been testimony of one who had seen the locus in quo in 1847 and shortly after. But as to the place where the second government survey shows meander lines and channel separating an island the testimony is:

"There never has been any channel to correspond with government meander lines shown on this plat [second survey]. It has been really for the most part as high ground as any ground in the vicinity. There never has been at either high water or low water a channel through between lots 5 and 6. * * * That is during the last 40 years. And the trees that were growing there then were more than 40 years old. Some of them are still there. The whole ground is covered with a growth of cottonwood and soft maple trees; some of them that are at least 75 or 80 years old now."

With no testimony to dispute the above as to the actual situation on the ground, we think it cannot be successfully contended that the finding attacked is not adequately supported. The second survey

must be taken as prima facie proof of the existence of a channel separating lot 6 from lot 5 and making the former an island, and some significance must be given to the fact that the contract under which that survey was made provided for the survey of islands. This notwithstanding, the testimony quoted makes as strong a case for plaintiffs as was made for the plaintiffs in the two early cases cited. The island, lot 11, there in dispute was not indicated in the first survey nor was the island, lot 6, here in controversy.

Appellant relies on Scott v. Lattig, 227 U. S. 229, 33 S. Ct. 242, 57 L. ed. 490, 44 L.R.A. (N.S.) 107, and Moss v. Ramey, 239 U. S. 538, 36 S. Ct. 183, 60 L. ed. 425. In the Scott case the island contained 138 acres, and in the Moss case 110 acres. They were located in Snake river where it is the boundary between the states of Idaho and Oregon. A channel of considerable width existed on both sides of the islands. Harding v. Minneapolis N. Ry. Co. (C. C. A.) 84 F. 287, is on the facts similar to the Scott and Moss cases. It would be plain that the patents granted to lands bordering the river would not embrace any part of the islands opposite thereto but separated by a channel under the decision in the Schurmeier case in 7 Wall. 272, 19 L. ed. 74. On the other hand, if there was no island opposite lot 5, section 4, at the time of the first survey and no channel between the meander line of said lot and the low water mark of the river, the title of the government passed to all of said lot 5 to said low water mark, and the government was without power to carve out lot 6 therefrom by a subsequent survey.

G. R. & I. R. Co. v. Butler, 159 U. S. 87, 15 S. Ct. 991, 40 L. ed. 85, throws some light on the subject of the effect of second surveys made after rights have accrued through patents under a prior survey, as do also Whitaker v. McBride, 197 U. S. 510, 25 S. Ct. 530, 49 L. ed. 857, and U. S. v. State Inv. Co. 264 U. S. 206, 44 S. Ct. 289, 68 L. ed. 639.

The order is affirmed.