## No. 7949.

## BONEWITS *v.* WYGANT.

REAL ESTATE.—*Action to Recover.—Practice.— Venire de Novo.— Verdict.— Disclaimer. — Remittitur.* — Where, in an action for the possession of an island, one of the two defendants entered a disclaimer before trial, and the verdict was that both defendants "are the owners in fee simple of the land described in plaintiff's complaint," and they entered a remittitur as to the lands, except that part described in their cross complaint seeking to quiet their title, no such uncertainty appears in the verdict as required a *venire de novo.*

SAME.—*Surveyor's Record and Testimony.*—On trial of such action, it was not error to permit the introduction in evidence of the county surveyor's record containing his survey of the island sued for, under direction of the Surveyor General of the United States, and testimony of the surveyor that his plat and notes were correct, even if the record was not signed by the surveyor.

SAME.—*Transcript of Land Records by Auditor of State.— Evidence.—*On such trial, a transcript of the survey and field notes of the island among the records in the land department of the State, properly authenticated by the Auditor of State, was correctly admitted in evidence.

SAME.—*Riparian Rights.—Island in Wabash River.—Adverse Possession of Twenty Years.—Survey and Sale by United States.— Title of Purchasers Quieted.*—In an action to recover possession of an island in the Wabash river, claimed by the owner of the adjacent land south, under riparian rights, as an accretion by reason of the partial filling up of the channel on his side of the thread of the stream, evidence that defendants were in continuous adverse possession more than twenty years before the commencement of the suit, and had purchased of the United States in 1857, after a survey ordered in 1849, and made in 1850; that when plaintiff purchased the island, in 1837, it had been omitted from the original survey, except to designate its location, and that he never had possession or exercised acts of ownership over the same, or asserted title thereto before this action, a verdict for the defendants is sustained by the evidence and supported by the law.

Bonewits *v.* Wygant.

From the Huntington Circuit Court.

*B. M. Cobb, B. F. Ibach* and *G. W. Stultz,* for appellant.
*H. B. Sayler, L. P. Milligan* and *A. Moore,* for appellee.

FRANKLIN, C.—This is a suit for the possession of an is-
land, situated in the Wabash river, in Huntington county,
Indiana, containing 8 acres and 24 rods.

Issues were formed by a denial, statute of limitations and
cross complaint, to quiet title in defendants. Trial by jury ;
verdict and judgment for defendants.

Demurrer to cross complaint, motions for a *venire de novo*
and for a new trial, all overruled, and excepted to.

The appellant claims title under a purchase from the gen-
eral government, made April 4th, 1837, of the north frac-
tional half of section 3, in township 27 north, and range 10
east. The appellees claim title under possession since 1850,
and a purchase of the island from the general government
in 1857.

The island is situated near the northwest corner of said
section 3, on the section line dividing sections 3 and 34,
about one acre of the island lying north of the section line ;
the river across the north end of the west half of said sec-
tion 3 runs east and west with the section line in the river
for that distance.

Appellant has assigned for errors the overruling of his
motion for a *venire de novo,* his motion for a new trial, and
his demurrer to the cross complaint.

The motion for a *venire de novo* is based upon an alleged
uncertainty in the verdict, which reads as follows : "We,
the jury, find for the defendants, and we find that John A.
Wygant and Charles Wygant are the owners in fee simple
of the land described in plaintiff's complaint." Defendants
entered a remittitur as to all the lands except that part de-
scribed in defendants' cross complaint, the defendant John
Wygant having before trial entered a disclaimer.

Bonewits *v.* Wygant.

We see no uncertainty in the verdict, that would require it to be set aside and a *venire de novo* granted. The court did right in overruling the motion.

Appellant, in his brief, has not discussed his assignment of error in overruling the demurrer to the cross complaint, and that is considered as waived.

Appellant insists that he ought to have been granted a new trial, for the reasons alleged, that improper evidence was admitted on the part of appellees ; that the verdict was not sustained by sufficient evidence, and was contrary to law. The evidence complained of was the introduction in evidence of the surveyor's record, containing the survey of the island by the county surveyor, under the direction of the surveyor general of the United States, made August 14th, 1850. The surveyor was present, and testified that he made the survey and the record, that the plat and field notes therein contained were correct.

We think this testimony was properly admitted, in order to identify the island with its proper description, even if the record was not signed by the surveyor.

A transcript by the auditor of state from the records of the land department at Indianapolis, containing the survey and field notes of said island, as testified to by said county surveyor, was also objected to. The transcript was properly authenticated, and we think correctly admitted as evidence.

The evidence shows, that prior to 1840, there was a channel of the river on both the south and north sides of the island. Since 1840, a bar formed at the east end of the island and across the channel on the south side of the island, and that channel has since partially filled up, until it has no current except in times of high water. That appellant and those under whom he holds have been in the possession and occupancy of the north fractional half of said section for more than forty years, but never have had possession of the island, nor exercised any acts of ownership over the same.

A transcript from the records of the General Land Office at Washington City, of the original survey of the north line of said section 3, was given in evidence by the appellant. And if we understand the plat and field notes as contained in that transcript, the north fractional half of said section 3 does not contain in its description any part of the island. That the north line of said west half of said north fractional half was entirely upon the south side of the river. That no number of acres was designated on the plat for the island, and that no notice of the island had been taken by the surveyor, except to designate its location. While the island was not estimated in the number of acres offered for sale by the general government under the original survey, yet the doctrine that the riparian rights of the land-owner extend to the thread of the stream, except in our large actually navigable rivers, is well established in this State. And this right follows the changes of the thread of the stream, when the changes are made by the gradual washings and accretions of the soil. If the changes are made suddenly, without removing the intermediate soil, such as cut-offs, or the changing of the channel from one side of an island to the other, the riparian rights in the soil not moved by the water do not change with the thread of the stream.

"If there are islands in the river, they belong to the owner of the bank on whose side of the center they lie , or, if they divide the main channel, they will themselves be divided in ownership between the bank proprietors." Judge Cooley's essay on the title to land under fresh water lakes, ponds, and rivers, Cent. L. J., p. 1, July 8th, 1881, and authorities therein cited. This doctrine perhaps ought to be limited to islands that are too small to form a subdivision of lands in the survey, the same as the beds of lakes and ponds.

This island appears to have been regarded by the general government as an omitted tract of land in the original survey, and the Surveyor General, in 1849, directed a survey of

the island to be made, which was done, and the island was sold by the general government in 1857. As to whether proprietors on the south side of the river adjacent to this island had riparian rights extending over the island, which might have been maintained had they been asserted within the proper time, it is unnecessary to decide, for it is very clear that the island has been held in adverse possession, under claim and color of title, for more than twenty years prior to the commencement of this suit.

It was taken possession of by one Armstrong, a stranger to appellant's chain of title, about the time of its survey in 1850, and under some pretended homestead or pre-emption claim, traded several times until 1857, when it was purchased by the occupying claimant from the general government, since which time it has remained in the continuous adverse possession and occupancy of appellees, and those under whom they hold, under an avowed claim and color of title. All of which was, during all of said time, with the full knowledge of the owners and occupiers of the said north fractional half of the west half of said section 3, and with full opportunities for them to have asserted their claim to said island if they so desired.

We think the evidence fully sustains the verdict, and the verdict is supported by the law.

PER CURIAM:—It is therefore ordered, upon the foregoing opinion, that the judgment below be, and it is hereby, in all things affirmed, with costs.