## CASTLE v. SMITH.

### No. 18,156; March 28, 1894.

36 Pac. 859.

**Nuisance—Liability of Grantee—Notice.**—In an Action against the grantee of land for the continuance of a nuisance erected by his grantor, notice to defendant that the erection was a nuisance is essential to plaintiff's cause of action, and it is not for defendant to show want of such notice. Such notice is not dispensed with by Civil Code, section 3483, making a grantee liable "in the same manner as the one who first created the nuisance," as the liability of the creator is based on the presumption that he has notice that it is a nuisance, which presumption does not arise against the grantee.

**Nuisance—Liability of Grantee—Notice.**—There is No Presumption that a grantee knows that a dam erected by his grantor on the land was erected without the consent of others affected thereby.

**Nuisance.**—In an Action for Damages Caused by the erection of a nuisance, and to compel defendant to abate the same, plaintiff may waive the equitable relief, and thereby render a finding of facts by the court unnecessary.

**Judgment.**—Where the Complaint Contains Two Counts, one of which does not constitute a cause of action, and the error in rendering a judgment thereon can be cured by a modification of the judgment, the verdicts on each count having been returned separately, a new trial will not be ordered.

APPEAL from Superior Court, San Joaquin County; Ansel Smith, Judge.

Action by C. C. Castle against Jennie Smith. From a judgment for plaintiff, defendant appeals. Judgment modified.

W. L. Dudley, James H. and John E. Budd, and J. C. Campbell for appellant; Swinnerton & Rutherford for respondent.

PER CURIAM.—Action to recover damages for diverting water from defendant's land, and causing it to overflow

plaintiff's land, by reason of maintaining a dam on defendant's land across a slough, and also for opening a levee on defendant's land, and thereby causing an overflow of plaintiff's land. In addition to damages, plaintiff prays for a decree that defendant abate the alleged causes of the overflow, as nuisances, by removing her dam, and closing in her levee. Richard Smith, son of defendant, was made a defendant, but, as to him, a nonsuit was ordered at the close of plaintiff's evidence in chief. The case was tried by a jury, and the jury returned a general verdict for the plaintiff on each of the two counts of the complaint; assessing the damages on the first count (for maintaining the dam) at $4,500, and on the second count (for opening the levee) at $3,500. After the verdict, and before the judgment, the plaintiff withdrew his prayer for the abatement of the alleged nuisances, and waived all equitable relief; and thereupon judgment was rendered on the verdict for $8,000 and costs, taxed at $482.80. The defendant appeals from the judgment and from the order denying her motion for a new trial.

It is admitted that since 1880 the plaintiff has owned the south half of section 18, and southwest quarter of section 17, township 2 north, range 6 east, and that from 1880 until August 3, 1889, George F. Smith (defendant's husband and grantor) owned the north half of section 19, and northwest quarter of section 20, of the same township, and adjoining plaintiff's land on the south side thereto, all situate in the county of San Joaquin. It appears that all the lands above described are swamp and overflowed lands, not generally susceptible of cultivation without reclamation; that they are, to some extent, overflowed by the tides, and are also subject to periodical overflows, to the depth of three to five feet, from the San Joaquin river and other sources, by extraordinary floods. It does not appear, however, that any part of these lands have been purchased from this state. A slough called "Twelve-mile slough" crosses the lands of plaintiff and de-

fendant, diagonally, from northeast to southwest, as shown
on the following diagram:

Twelve-mile slough has no natural source of water supply,
except surface drainage, during the rainy season, and has in it
no water, except standing pools, during the dry season. That
part of it which crosses the corner of plaintiff's land and the
northwest quarter of section 20 has well-defined banks, which,
at the dam, are ten to eleven feet high; but below the middle
of the northeast quarter of section 19 the slough is a mere
swale, having no well-defined banks, and being only about a
foot to a foot and a half lower than the general level of the
land bordering upon it. The east line of plaintiff's and de-
fendant's lands is marked "Line of Segregation" upon an
unofficial map used on the trial, and is understood to be the
line of segregation between the swamp lands and high lands.
In 1882 the plaintiff and the defendant's grantor, George F.
Smith, verbally agreed to reclaim their lands in the manner
following: Each, at his own expense, was to build a levee from
a point at the extreme junction of their lands around his land
to the segregation line; that is, the plaintiff was to build on
the north and west of his land, and Smith on the south and
west of his, and join their levees at said point on the west,
where they were, jointly, to build a floodgate. This agreement
was executed by the completion and junction of their levees
in the fall of 1883. During 1884 they discovered that their
levees, alone, were insufficient to protect their lands. Having
been constructed mostly of peat turf, they were porous, so that
large quantities of water seeped through and under them,

which, together with the water from the slough and surface drainage, overflowed their lands. Thereupon, each erected pumping-works—the plaintiff on his north line, and Smith on his west line. By means of these pumps they were generally able to keep the water down; but, in consequence of a disagreement as to the proportion of pumping each should do, plaintiff, in 1886, built a levee about three feet in height on or near his southern line, for the purpose of preventing the water from passing from the land of one to that of the other, thus relieving himself from pumping any part of the water coming in through the slough. Thereupon, Smith proposed to plaintiff that they jointly excavate a canal on the line dividing their lands, and build a levee on each side thereof, and, by means of a dam across the slough, turn the water of the slough through such canal. To this proposal plaintiff declined to assent. Smith then said he would excavate the canal on his own land, and construct a dam across the slough, turning the water of the slough into the canal, and build a levee on his side of the canal. Plaintiff objected to this, unless Smith would also build a sufficient levee on plaintiff's side of the canal. Smith declined this condition, and against the protest of plaintiff, proceeded to excavate the canal, and to build the dam and levee on his own land, and completed them on the twenty-fifth day of December, 1886. The levee thus constructed by Smith on the south side of the canal was of equal height with his outside levees, and about two and one-half feet higher than plaintiff's levee on the north side of the canal. During the next three years—that is, until December 25, 1889—the canal carried off the water from the slough without any overflow of, or injury to, plaintiff's land; and the evidence does not tend to show that plaintiff made any objection or complaint to Smith, or any other person, on account of the dam or canal, during that period of three years. On August 3, 1889, Smith executed a deed to his wife—the defendant, Jennie Smith—conveying to her all his land above described, and thereafter, on January 9, 1890, died.

1. The appellant contends that the judgment on the first count of the complaint is erroneous, for the reason that there was neither averment nor evidence that the defendant had any notice before the commencement of the action that the dam across the slough was a nuisance, nor that it ever had any

injurious effect upon the plaintiff or his property, nor that she was requested to remove it. We think this point must be sustained. It is only alleged in the first count that defendant "kept and maintained the dam across the slough since August 3, 1889, and thereby turned the water of the slough on plaintiff's land, to his damage," etc. Neither the canal nor levee is complained of. It is not averred that defendant ever had notice that the dam was a nuisance, or had any injurious effect upon plaintiff or his property, nor that she was ever requested to remove it; and while the evidence on the part of the plaintiff clearly showed that the dam was erected in 1886 by George F. Smith, as above stated, it had no tendency to prove notice to defendant of the alleged nuisance, nor a demand upon her to abate it. And the defendant testified positively that she had no such notice, and that no such demand was made upon her, before the commencement of this action. In answer to this point, counsel for respondent claim that such notice and demand were not essential to plaintiff's cause of action, and that the want of them is mere matter of defense, which should have been pleaded as such by the defendant; but we think this position cannot be maintained. In Grigsby v. Water Co., 40 Cal. 407, it was said: "The rule seems to be well established that a party who is not the original creator of a nuisance is entitled to notice that it is a nuisance, and a request must be made that it may be abated, before an action will lie for that purpose, unless it appear that he had knowledge of the hurtful character of the erection." In Plumer v. Harper, 3 N. H. 88, it was said: "It is agreed in all the books that the grantee is not liable, until, upon request, he refused to remove the nuisance." This case is reported in 14 Am. Dec. 333, with notes by Mr. Freeman, in which he says: "The overwhelming weight of authority, therefore, is in favor of the position that no action will lie against him [the grantee] for merely continuing the erection which constitutes the nuisance in its original state, unless he has notice to abate it, and such notice is alleged. And this is so, notwithstanding the fact that he may have made repairs upon the erection constituting the nuisance, so long as such repairs do not render it more noxious than it was when it came to his possession": See the numerous cases cited to these points. Also Conhocton Stone Road v. Buffalo etc. R. Co., 51 N. Y. 573, 10 Am. Rep.

646, and Dodge v. Stacy, 39 Vt. 560. The case of Pierce v. Society, 72 Cal. 180, 1 Am. St. Rep. 45, 13 Pac. 478, is not in point for respondent, since, in that case, it appears that the defendant had "full notice" of the nuisance which was caused by the manner in which a steam-bathing establishment, out of repair, was used. Section 3483 of the Civil Code provides: "Every successive owner of property who neglects to abate a continuing nuisance upon or in the use of such property created by a former owner, is liable therefor in the same manner as the one who first created it." It is claimed that this section dispenses with notice of the nuisance to the successive owner. But it is to be observed that the owner who creates the nuisance is presumed to have notice that it is a nuisance; therefore, is held liable without notice; whereas, no such presumption is indulged against his successor. Consequently, notice to the successor must be proved, else he would be held liable in a different manner from the owner who created the nuisance, as well as for a different cause. It is further claimed that the character of the dam was such that knowledge of its existence, which it is admitted defendant had, was notice to her that it injuriously affected plaintiff's land. Yet it clearly appears from the testimony of the plaintiff, as well as the testimony of other witnesses, that his land was not injured by the dam or canal until December 25, 1889, three years after their construction. And as to the injuries to plaintiff's land and crops alleged to have been suffered between December 25, 1889, and April, 1890, it is clear from the evidence that they were proximately caused by the extraordinary floods during that period, and would have been just as great if the dam and levee had not existed. All the lands similar to plaintiff's land in that vicinity, including defendant's land, were overflowed by the same floods. If there had been no dam, and no cross-levee, all the water from the slough would have flowed upon the lands inclosed by the outside levees, and would have spread all over them, as it did in 1884 before they were built (the land of the plaintiff being as low as that of defendant), and could not have escaped through the floodgates, for the reason that the water outside the levees was nearly up to the top of those levees. The outside pressure on those turf levees caused a great amount of seepage, which, together with the accumulation of surface drainage, would

have overflowed all the land inclosed by the outside levees, without any contribution from the slough, and actually did overflow defendant's land, notwithstanding its protection from the slough. In regard to this the plaintiff testified as follows: "I first saw the waters of Twelve-mile slough running in this canal, and over onto my land, in December (about Christmas), 1889. It did not come in the 1st of December, 1889. There was a great fall of snow and rain in the fall and winter of 1889 and 1890. The whole section of the country around there was all flooded. Smith's land was all covered over with water. A portion of it came from back water, seepage water, and a portion of it from the sloughs and head. The water that came down the slough covered my land. The back water came up to the top of the levee in two places, and washed over, and we put in sacks and stopped it. It was near my engine-house, on the north side of the levee. The water did not run over the top anywhere else on my levee. It continued running over there for about an hour. Then it rained again, and the water came down. The head water and back water met. It would rise again. And it was that way from that time on, probably, for a month or more after that. From December, when the waters first commenced rising, away along through January, February, and March, the whole country thereabouts was submerged by water; my land, and Smith's land, and everybody else's thereabout. There was also water came down Twelve-mile slough, got in on Smith's land and mine, and there was no place for it to get off." Under the admitted circumstances, the testimony of the plaintiff corroborates, rather than disputes, the positive testimony of defendant that she had no notice that the dam was a nuisance, or injurious to plaintiff, until the commencement of this action. All the low lands in the valley were inundated by a sudden, extraordinary flood, not caused by the dam or slough in question. Why should defendant have attributed the overflow of plaintiff's land to any other cause? Then, again, no reason appears why she should have known, or even suspected, that the dam was not built with the approbation and consent of plaintiff, and there is no presumption that she did. So much of the evidence on this point is presented for the purpose of showing that the case, on the first count, does not necessarily turn on the question of pleadings. Yet it is evident that the

case was tried by plaintiff on the theory that notice to defendant of the nuisance was not essential to his cause of action; for, in his evidence in chief, there was nothing tending to prove that defendant had any knowledge whatever of the injury complained of in the first count, or of its cause, and here he relies principally upon the same theory.

2. The second count charges that in February, 1891, the defendant cut a wide and deep aperture through the western outside levee on her own land, at the west end of the canal by reason whereof, in the following month, the back waters from the San Joaquin river and tributaries flowed through the lands of plaintiff, and destroyed his crops thereon, etc. The evidence is sufficient to justify the verdict of the jury on this count, unless, as contended by the appellant, the defendant had a right to open the levee as she did. The arguments of counsel for appellant in support of this alleged right of the defendant to open the levee are principally, if not entirely, founded upon the assumption that the lands of the parties are legally "swamp and overflowed lands," authoritatively segregated, and certified to the state, and that the parties have acquired title from the state by purchase, and thereby have incurred such obligations to reclaim the land as are imposed by law on purchasers of swamp and overflowed land from the state. But there is nothing in the pleadings or in the evidence tending to show that these lands were ever lawfully segregated as swamp and overflowed lands, or that either party claims title or possession under the state. Therefore, neither the obligations assumed by purchasers of swamp and overflowed lands nor any deductions therefrom are relevant to this case.

3. The court did not err in refusing to find the facts after the plaintiff had waived all equitable relief. Section 731 of the Code of Civil Procedure provides that a nuisance is the subject of an action, in which "the nuisance may be enjoined or abated, as well as damages recovered." Under a similar provision of the practice act (section 249), it was said by Mr. Justice Sanderson, for the court: "The nuisance is the cause of action. The abatement and damages therefor are merely the different kinds of relief to which the plaintiff may be entitled": Yolo Co. v. Sacramento City, 36 Cal. 196. We perceive no reason why the plaintiff was not at liberty to withdraw his prayer for abatement of the nuisance, and thereby

waive the equitable relief prayed for, nor why, after such withdrawal and waiver, findings were necessary. The verdict of the jury, if justified by the evidence, supported the judgment for damages, at least. If no equitable relief had been prayed for, the action would have been purely legal, and such as the common law denominates an "action on the case." Therefore, after the withdrawal of the prayer for equitable relief, only an action at law remained. It does not appear why plaintiff's counsel waived equitable relief. They may have done so because, in their opinion, the complaint did not entitle plaintiff to such relief, or that such relief was not justified by the evidence. However, this may be, it seems clear that the defendant could not have been injured by the refusal of the court to find facts additional to the verdict.

4. Appellant contends that the court erred, in numerous instances, in its instructions to the jury, and in rejecting evidence offered by defendant. But, so far as relates to the second count, we find no error prejudicial to the defendant. As the first count states no cause of action, and the error of rendering a judgment thereon may be corrected by a modification of the judgment, a new trial should not be ordered. The judgment is therefore modified by reducing it to the sum of $3,982.80, which includes the costs of trial, and as so modified the judgment is affirmed; costs of appeal to be taxed to the respondent. The order denying defendant's motion for a new trial is affirmed.