## GRAHAM v. CHICAGO, INDIANAPOLIS & LOUISVILLE RAILWAY COMPANY.

[No. 5,200.    Filed March 9, 1906.    Rehearing denied May 18, 1906.    Transfer denied December 21, 1906.]

1.    PLEADING.—Complaint.—Railroads.—Negligent Obstruction of Watercourse.—A complaint showing that a railroad company constructed its road over a watercourse; that defendant company or its predecessor negligently reduced the opening for such watercourse so that it was inadequate to carry off the water; that defendant continued and still continues such condition and by reason thereof plaintiff has been injured, shows a negligent maintenance of such obstruction by defendant.    p. 296.

2.    RAILROADS. — Watercourses. — Right to Cross. — Statutes. —: Under §5153 Burns 1901, §3903 R. S. 1881, railroad companies have the right to build their roads over watercourses, but they are required to restore such watercourses to such a condition as to avoid damages.    pp. 297, 301.

3.    SAME.—Statutes.—Watercourses.—Duty to Restore.—It is the continuing duty of a railroad company, under §5153 Burns 1901, §3903 R. S. 1881, to restore a watercourse over which its road is built, to its former condition.    p. 297.

4.    SAME.—Watercourses.—Obstructions.—The obstruction of a watercourse by the building of a railroad across same without providing properly for the flow of waters therein is a violation of §5153 Burns 1901, §3903 R. S. 1881, and gives a right of action to the injured party.    p. 297.

5.　RAILROADS. — *Watercourses.* — *Obstructions.*—*Continuation.*—
The defendant railroad company is liable in damages for the
continuance of an obstruction of a watercourse, though its
predecessor created the obstruction.　p. 298.

6.　SAME. — *Watercourses.* — *Obstructions.* — *Continuation.* —
*Grantees.*—*Notice.*—Notice to the grantee railroad company
of an obstruction of a watercourse, created by its grantor is
not necessary to establish a liability on the part of defendant
company, since the violation of the mandatory statute (§5153
Burns 1901, §3903 R. S. 1881), requiring companies which
build their railroads across watercourses to restore them to
good condition, is essentially unlawful.　Wiley, J., dissenting.
p. 298.

7.　SAME.—*Inherent Rights.*—*Statutes.*—Railroad companies have
no "inherent rights," but are creatures of statute and have no
rights except those expressly or impliedly given by their creator.
p. 300.

8.　SAME.—*Charters.*—*Enumeration of Powers.*—The charter of
a corporation is the measure of its powers, the enumeration of
which impliedly excludes all others.　p. 301.

9.　SAME.—*Watercourses.*—*Right to Cross.*—*Statutes.*—*Construc-
tion.*—Section 5153 Burns 1901, §3903 R. S. 1881, providing
that a railroad company may construct its road across "any
stream of water, watercourse or canal," applies to all water-
courses and not merely to those that are navigable.　p. 301.

10.　SAME. — *Watercourses.*—*Nuisance.*—*Statutes.*—Whether the
obstruction of a watercourse by a railroad constitutes a public
or a private nuisance is not material, where it is shown that
such obstruction constitutes a violation of §5153 Burns 1901,
§3903 R. S. 1881, giving such a company the right to cross such
a stream on the sole condition that it shall restore such stream
to its proper condition.　Wiley, J., dissenting.　pp. 301, 302.

11.　SAME.—*Statutory Duties.*—*Avoidance of, by Sale.*—*Water-
courses.*—*Obstructions.*—A grantor railroad company cannot,
by a conveyance of its property, free its grantee from liabili-
ties imposed by statute in reference to the obstruction of a
watercourse.　p. 302.

From Harrison Circuit Court; *C. W. Cook,* Judge.

Action by James M. Graham against the Chicago,
Indianapolis & Louisville Railway Company. From a
judgment for defendant, plaintiff appeals. *Reversed.*

*Stotsenburg & Weathers* and *Henry M. Dowling,* for appellant.

*E. C. Field, H. R. Kurrie* and *Edward E. Mitchell,* for appellee.

Roby, C. J.—Appellant's complaint was in one paragraph. Appellee answered by a general denial. Trial by jury. General verdict for appellant assessing damages at $850. Appellee's motion for judgment on answers to interrogatories returned with the general verdict, was sustained. This action of the court is challenged by the assignment of errors.

It is averred in the complaint that appellee is a corporation owning and operating a railroad through Floyd county and through certain real estate owned by appellant therein; that extending through appellant's premises is a small branch or creek which is a natural watercourse and drains said premises; that said railroad was built upon an embankment across said stream; that, in order to permit the free flow of water, appellee's predecessor in the ownership of said railroad built and maintained an opening in said embankment, with a trestle over it upon which the track was laid; that the opening so made was adequate; that within the last five years, the exact date being unknown to the plaintiff, the defendant or its immediate predecessor in the ownership of the road wrongfully and negligently reduced said opening in size and rendered the same inadequate for such purpose; that the defendant has so continued and maintained such obstruction, and so continued to cause the water in said watercourse to be diverted and changed, ever since it has owned said railroad, which is averred to have been for more than five years, and that during the last three years the waters of said watercourse have been backed upon and overflowed plaintiff's land, destroying his crops, etc. The charge is thus clearly made that the watercourse was negligently obstructed and that such obstruction was negligently maintained by the

defendant. The original obstruction is averred to have been created by the defendant "or its immediate predecessor." The answers to interrogatories show that the defendant did not create it in the first instance. So, without determining whether the averments upon that subject were introductory to the specific charge of negligent maintenance, or intended as a distinct ground of liability, it remains to consider whether such maintenance furnishes a basis for the recovery of damages from the defendant.

Every railroad corporation is given by statute power to construct its road upon or across any stream of water, watercourse, road, highway, railroad, or canal, so as

2. not to interfere with the free use of the same, and in such manner as to afford security for life and property, and subject to the restriction that it shall restore the stream or watercourse, road or highway, thus intersected to its former state, or in a sufficient manner not to impair its usefulness. §5153 Burns 1901, §3903 R. S. 1881.

The obligation thus imposed is unequivocal in terms. The corporation which chooses to avail itself of the power thus granted takes it subject to the liabilities and

3. restrictions expressed in the act. The duty which it assumes is a continuing one. *Baltimore, etc., R. Co.* v. *State, ex rel.* (1902), 159 Ind. 510; *Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 158 Ind. 189; 2 Wood, Railroads (Minor's ed.), §276; *Evansville, etc., R. Co.* v. *Crist* (1889), 116 Ind. 446, 454, 2 L. R. A. 450, 9 Am. St. 865; *Evansville, etc., R. Co.* v. *Carvener* (1887), 113 Ind. 51; *Lake Erie, etc., R. Co.* v. *Shelley* (1904), 163 Ind. 36.

The obstruction of a stream, watercourse, road, railroad, or canal, by the construction of a railroad upon or across

4. it, so as to interfere with its free use, is beyond the power of any railroad corporation, and failure on the part of any such corporation to restore such

stream, watercourse, road, highway, railroad, or canal thus crossed by its railroad to its former state, or in a sufficient manner not unnecessarily to impair its usefulness, is a direct violation of a statute which gives a right of action to one injured thereby. *Pittsburgh, etc., R. Co. v. Greb* (1905), 34 Ind. App. 625; *Indianapolis, etc., R. Co. v. Stout* (1876), 53 Ind. 143; *Evansville, etc., R. Co. v. Carvener, supra; Evansville, etc., R. Co. v. Crist, supra; Louisville, etc., R. Co. v. Smith* (1883), 91 Ind. 119; *Louisville, etc., R. Co. v. Phillips* (1887), 112 Ind. 59, 61, 2 Am. St. 155; *Toledo, etc., R. Co. v. Milligan* (1891), 2 Ind. App. 578; *Terre Haute, etc., R. Co. v. Clem* (1890), 123 Ind. 15, 7 L. R. A. 588, 18 Am. St. 303.

The present owner of such railroad is liable to respond in damages for injury thus negligently caused, notwithstanding that the obstruction was originally created 5. by its predecessor in the ownership of the railroad, because each day of the continuance of such obstruction is a fresh violation of the statute. *Pettis v. Johnson* (1877), 56 Ind. 139, 149; *Lake Shore, etc., R. Co. v. McIntosh* (1895), 140 Ind. 261, 268; *State v. Louisville, etc., R. Co.* (1882), 86 Ind. 114.

The proposition that the grantee of real estate upon which there is an existing nuisance of a nature not essentially unlawful is liable to an action therefor only 6. after notice to remove or abate it (*City of Valparaiso v. Bozarth* [1899], 153 Ind. 536, 538, 47 L. R. A. 487) affords no aid to appellee, for the reason that an act done in defiance of a mandatory statute (*Evansville, etc., R. Co. v. Crist* [1889]; 116 Ind. 446, 2 L. R. A. 450, 9 Am. St. 865) is "essentially unlawful." To require notice of its own delinquency to be given in such a case to the corporation would be to put the burden of its disregard of the statute upon others, which cannot be allowed. *Davis Coal Co. v. Polland* (1902), 158 Ind. 607, 618, 92 Am. St.

319; *Monteith* v. *Kokomo, etc., Co.* (1902), 159 Ind. 149, 58 L. R. A. 944.

Judgment reversed. Cause remanded, with instructions to overrule appellee's motion for judgment on answers to interrogatories and for further proceedings.

Black, P. J., Comstock, Myers and Robinson, JJ., concur. Wiley, J., dissents.

## ON PETITION FOR REHEARING.

ROBY, C. J.—The argument in support of this petition is based principally upon the assertions that §5153 Burns 1901, §3903 R. S. 1881, does not give the railroad company the right to cross a stream such as the one shown in the case at bar, "because the right exists independent of the statute, and it was in no way enlarged by it;" that "the statute relied on, * * * in so far as it refers to watercourses, gives no rights except as to navigable streams;" that the effect of the obstruction complained of is to create a private and not a public nuisance.

By sections one, two and three of an act in force May 6, 1853 (1 R. S. 1852, p. 409, §§5134-5136 Burns 1901, §§3885-3887 R. S. 1881), provision is made for the formation of a corporation for the purpose of constructing, owning, and maintaining a railroad. Section thirteen of said act (§5153 Burns 1901, §3903 R. S. 1881), confers upon such corporation certain powers which are thereunder expressly made subject to the liabilities and restrictions expressed. These powers as enumerated in the various subdivisions may be epitomized as follows: (1) To make necessary examination and survey for the proposed road; to enter upon the lands or waters of any person, "but subject to responsibility for all damage which they shall do thereto." (2) To take voluntary grants and donations. Real estate thus received to "be held and used" for the purpose of such grants only. (3) To purchase and hold lands and other property necessary to accomplish the ob-

jects for which it is created, "but not until the compensation * * * shall have been paid * * * or deposited." (4) To lay out its road and take lands necessary for its proper construction. (5) "To construct its road upon or across any stream of water, watercourse, road, highway, railroad or canal, so as not to interfere with the free use of the same, which the route of its road shall intersect, in such manner as to afford security for life and property; but the corporation shall restore the stream or watercourse, road or highway, thus intersected to its former state, or in a sufficient manner not to unnecessarily impair its usefulness or injure its franchises." (6) To cross other railroads. (7) To purchase lands in order that it may change the line of its road. (8) To transport persons and property by steam or other mechanical power, and receive compensation therefor. (9) To erect and maintain necessary buildings. (10) To regulate traffic over its line. Sections fourteen, fifteen, sixteen, seventeen, and eighteen of said act relate to the acquirement of lands by appropriation.

The appellee railroad company exists by virtue of this legislation. Availing itself of the power conferred upon it by the act which makes its existence possible, it now proposes to evade the limitations placed upon the exercise of such powers by the same statute. It calmly assumes the dignified position of a natural person possessing inherent rights independent of legislation, ignoring what it in fact is, how it was made, and who made it. Nothing can be better settled than that a corporation being a mere creature of the law, possesses those powers only which are given to it by its charter, either expressly or impliedly, as necessary in strict furtherance of the object of its creation. *Huntington* v. *National Sav. Bank* (1877), 96 U. S. 388, 24 L. Ed. 777; *Beaty* v. *Knowler* (1830), 4 Pet. *152, 7 L. Ed. 813; *Runyan* v. *Coster* (1840), 14 Pet. *122, 10 L. Ed. 382.

Graham *v.* Chicago, etc., R. Co.—39 Ind. App. 294.

The charter of a corporation is the measure of its powers, the enumeration of which implies the exclusion of all others. *Green Bay, etc., R. Co.* v. *Union Steam-boat Co.* (1882), 107 U. S. 98, 27 L. Ed. 413, 2 Sup. Ct. 221; *Fertilizing Co.* v. *Hyde Park* (1878), 97 U. S. 659, 24 L. Ed. 1036; *St. Clair, etc., Turnpike Co.* v. *Illinois* (1877), 96 U. S. 63, 24 L. Ed. 651.

The terms of the statute referred to do not permit a railroad corporation to construct its road across any stream of water, watercourse, or canal without restoring the same in a sufficient manner not unnecessarily to impair its usefulness. The power to cross thus conferred, when taken, is taken subject to the limitation and not otherwise.

The second proposition argued is equally ineffective. If the provisions of the fifth subdivision of §5153, *supra,* were intended to apply only to navigable streams, it is to be presumed that the legislature would have so stated. The words used are of the most comprehensive character, and do not admit of any other meaning being placed upon them than the clear and ordinary one which they in themselves convey. *State* v. *Shelton* (1906), 38 Ind. App. 80.

The distinction between public and private nuisances is entirely foreign to the decision. The restriction upon the appellee's power to cross any stream of water or watercourse, contained in the fifth subdivision of the foregoing statute, is no different in principle from the restriction contained in the first subdivision, upon its power to make preliminary surveys, etc. The responsibility therein declared is by the act made a necessary incident to the exercise of the power granted. Whether the legislature could have empowered a corporation to act in either regard without limitation is not important, since it did not, in either case, attempt so to do.

The corporation constructing the railroad in question, without regard to the statutory liability of restriction, could not, by a conveyance to appellee, convey a greater right than it possessed, nor could it by such transaction relieve appellee from the performance of a statutory duty.

It is not, therefore, necessary to enter into a discussion of the distinctions between private and public nuisances, since an act in defiance of the statute is essentially unlawful, and not within the principle requiring notice to the purchasers of land upon which a private nuisance exists.

The petition for a rehearing is overruled.

Black, P. J., Comstock, Myers and Robinson, JJ., concur.

## DISSENTING OPINION.

WILEY, J.—I could not concur with my associates in the decision of this cause, and the prevailing opinion discloses my dissent. It was not my intention at the time to write a dissenting opinion, but, upon reflection and further consideration, I have concluded to state, as briefly as I can, my reasons for dissenting. To do this satisfactorily to myself, I desire to state the substance of the complaint, and all the important facts specially found.

Opposing counsel do not agree as to the theory upon which the complaint proceeds, and while I do not think it makes any material difference, as affecting the decision, I quote from the complaint as follows: "That when said railroad, now owned, maintained, and operated by the defendant, was constructed on and across the lands now owned by the plaintiff and above described, it was built and placed upon a high embankment; that said embankment was so made across said branch or creek; that in order to permit the free flow of water in said branch or creek, through and across said embankment, said defendant's predecessor in the ownership of said road built and maintained

an opening in said embankment, with a trestle overhead, upon which were placed the railroad tracks of the defendant's predecessor company; that said opening as it was originally built, constructed and maintained was sufficiently large to permit the free flow at all times of all water in said creek or branch; that within the last five years, the exact date of which the plaintiff is unable to give, the defendant, or its immediate predecessor in the ownership of said road, placed in said opening an iron pipe about three and one-half feet in diameter and filled said opening around said pipe with dirt and stones, thereby stopping and closing up said opening, except so much thereof as is embraced within the circumference of said pipe; that the acts of said defendant in removing said trestle and replacing same with said iron pipe were wrongful and negligent in this, that the water running through said watercourse was diverted and changed from its natural course, and said pipe was insufficient to carry off the water of said watercourse, but that the course of the same was changed and part of the water thrown back upon the lands of the plaintiff, flooding such lands, and part was thrown against plaintiff's land on the opposite side from his house, washing excavations therein. Plaintiff further avers that said defendant has been the owner of said railroad for more than five years, and ever since it has so owned said railroad it has so maintained said dam and said pipe in said embankment, and has so continued and maintained the obstruction of said watercourse, and has so continued to cause the water in said watercourse to be diverted and changed as aforesaid."

It will be observed that it is first charged that within the last five years the "defendant, or its immediate predecessor in the ownership of said road," placed in the opening in the embankment an iron pipe for the flow of the water. It is then averred that appellant has been the owner of the road for more than five years, etc. The first aver-

ment, as to which company put in the pipe, is negative and uncertain, for it is charged that either the appellee or its predecessor did it, and that it was done within the "last five years." The subsequent averment that appellee had owned the road for more than five years, carries with it the necessary conclusion that it put in the pipe. This conclusion is made irresistible by the averment that it was put in "within the last five years." As appellee had owned the road for more than five years, and the pipe was put in within the last five years, it would have been a physical impossibility for appellee's predecessor to have created the nuisance of which complaint is made. It is also specifically alleged that "the acts of said defendant in removing said trestle and replacing same with said iron pipe were wrongful and negligent," etc. The conclusion to me, from these averments, is that the complaint proceeds upon the theory that appellee put in the pipe, and created the obstruction to the flow of water, etc. This would create a liability against appellee, for which it could be required to respond in damages without regard to the question of notice. Having proceeded upon that theory, appellant is bound by it through the entire progress of the case. *Cleveland, etc., R. Co.* v. *Dugan* (1898), 18 Ind. App. 435, and cases there cited.

The evidence is not in the record, and no attempt has been made to bring it in. In the absence of the evidence, and as the jury returned a general verdict for appellee, all reasonable inferences in support of that general verdict will be indulged. It must, therefore, stand, unless the facts specially found are in irreconcilable conflict with it, and in that event it must yield to the more potent influence of the facts which antagonize it. The following interrogatories and answers show that appellant's predecessor put in the pipe, and that its railroad right of way was afterward conveyed to appellee in the condition in which it was when the injury to appellant's property occurred: "Was said iron

pipe put in by the Louisville, New Albany & Chicago Railway Company? A. Yes. Has said pipe been left just as it was so put in by said company? A. Yes. Was the property of said company, including its right of way and said pipe, afterwards conveyed to the defendant by deed? A. Yes. Has defendant ever made any changes in said pipe or opening since it has owned said property? A. No." Upon these facts counsel for appellant insist that appellee is liable for maintaining the nuisance complained of, after it acquired the railroad and right of way, as it is alleged in the complaint that the injury to appellant's property occurred within three years before the commencement of the action, and that that is the theory of the complaint. If appellee is thus liable, without reference as to whether it created the nuisance, or acquired the property with the nuisance attached, then the point may be well taken, and the majority opinion is correct. On behalf of appellee it is earnestly argued that appellant cannot recover for two reasons: (1) That the complaint proceeds upon the theory that appellee erected the obstruction complained of, and the jury found against it, by the facts established by the answers to interrogatories. (2) That as appellee's predecessor erected the obstruction, before it could be held liable it was entitled to notice and a request to abate the nuisance.

Having tried to state fully and fairly the issues tendered by the complaint, the facts as specially found, and the opposing and conflicting positions assumed by counsel, I now direct my attention to the prevailing opinion, before entering upon a discussion of the legal questions involved. If I comprehend the opinion correctly, appellee is held liable, not for creating, but maintaining the nuisance, on the theory that it is a direct violation of the statute; that "each day of the continuance of such obstruction is a fresh violation of the statute," and "that an act done in defiance of a mandatory statute is essentially unlawful." The statute which my associates consider as controlling is sub-

division five of §5153 Burns 1901, §3903 R. S. 1881, and so much of it as is pertinent to the question under consideration is as follows: "Every such corporation shall possess the general powers, and be subject to the liabilities and restrictions expressed in the special powers following: * * * Fifth. To construct its road upon or across any stream of water, watercourse, * * * so as not to interfere with the free use of the same, which the route of its road shall intersect, in such manner as to afford security for life and property; but the corporation shall restore the stream or watercourse * * * thus intersected, to its former state, or in a sufficient manner not to unnecessarily impair its usefulness or injure its franchises." The prevailing opinion says: "The corporation which chooses to avail itself of the power thus granted takes it subject to the liabilities and restrictions expressed in the act. The duty which it assumes is a continuing one." As applied to the original wrongdoer, the rule just quoted is a correct expression of the law, but where I differ with my associates is in the application of that rule to an innocent grantee, without notice. If the rule is applicable alike to the original wrongdoer and its grantee, the conclusion as announced in the opinion is correct. My judgment is that the premise is false, and necessarily the conclusion wrong. By the original opinion appellant is held liable because of the act of its predecessor in ownership, and because such act is a continuing wrong, regardless of whether appellant had notice of the wrong. With the utmost deference to my associates, I venture the suggestion that they have been led into error by their failure to draw the essential distinction between a public and a private nuisance. The cases referred to in support of the proposition that each day's continuance of the obstruction is a fresh violation of the statute have no reference to or bearing on the liability of a grantee of a private nuisance. In *Pettis* v. *Johnson* (1877), 56 Ind. 139, the nuisance complained of was the

obstruction of a public street by the erection of a stairway, under authority attempted to be given by a town board. The court said: "The present owner of the stairway is liable for its continuance, it being a public nuisance, notwithstanding he did not erect it, because, it becomes, each day of its existence, a fresh nuisance." The conclusion seems irresistible that the decision was placed upon the ground that the stairway was a public nuisance. This being true, if it was a private one, there would be no liability of a grantee without notice, etc. In *State* v. *Louisville, etc., R. Co.* (1882), 86 Ind. 114, there was an indictment for maintaining a public nuisance, and no question was presented as to the liability of a grantee. In that case it was held that each day's violation would constitute a separate and continuing wrong. This is undoubtedly true as to a public nuisance, for it cannot ultimately ripen into a right by prescription. A contrary rule prevails as to a private nuisance.

That the obstruction of the street was a public nuisance fully appears from the following quotation from *State* v. *Louisville, etc., R. Co., supra:* "The doing of a lawful act in an illegal and wrongful manner may cause the thing done to be treated as a public nuisance. * * * A railroad company having the right to use the streets may unquestionably be subject to indictment if it so abuses its rights and privileges as unnecessarily or unreasonably to encumber or obstruct the streets." The remaining case cited is *Lake Shore, etc., R. Co.* v. *McIntosh* (1895), 140 Ind. 261. That case grew out of an improper condition of a public crossing, and it was alleged that appellant had full notice of the fact. While the court held that the complaint charged that appellant created the condition, yet it would be liable because it still maintained and used the negligently constructed crossing. That was also a public nuisance. The opinion refers to the act of appellee's predecessor as "done in defiance of a mandatory statute," and says that it was "essentially unlawful." In the case of

*Cleveland, etc., R. Co.* v. *Wisehart* (1903), 161 Ind. 208, it was held that a railroad company was not liable for damages to adjoining lands from the obstruction of a watercourse by a roadbed embankment, in the absence of wilfulness or negligence. In that case §5153, *supra,* was under consideration, and the act complained of was the obstruction of a watercourse. The court said: "The statute hereinbefore set out expressly authorized the railroad company to construct its road upon or across the stream or watercourse in controversy, subject to the conditions therein provided, and for merely doing what the law authorized certainly affords appellee no cause of action. Appellant undoubtedly had the right to construct the trestle bridge and the embankment, as shown, on its own premises or right of way. These were necessary, as we may assume, to the successful operation of its road. Therefore, to render tortious the act of appellant in allowing or causing the dirt used in the construction of said embankment to spread or fill up the ditch or waterway, as alleged, there should have been some averments or allegations to show that the act of filling up the ditch on its own lands, and thereby obstructing the flow of the water, was either wilfully or negligently done to the injury of appellee. *Bellinger* v. *New York Cent. R. Co.* [1861], 23 N. Y. 42; *Wallace* v. *Columbia, etc., R. Co.* [1890], 34 S. C. 62, 12 S. E. 815; *Koch* v. *Delaware, etc., R. Co.* [1892], 54 N. J. L. 401, 24 Atl. 442; *Pittsburgh, etc., R. Co.* v. *Gilleland* [1867], 56 Pa. St. 445, 94 Am. Dec. 97; *Terre Haute, etc., R. Co.* v. *McKinley* [1870], 33 Ind. 274; *Pennsylvania Co.* v. *Marion* [1885], 104 Ind. 239; *Powers* v. *St. Louis, etc., R. Co.* [1897], 71 Mo. App. 540; 3 Elliott, Railroads, §§937, 1005, 1057; 1 Chitty, Pleading (16th Am. ed.), *403. The rule is well settled that, if a person does a lawful act on his own premises he is not liable for damages resulting therefrom, unless the act was so done as to constitute actionable negligence. *Wallace* v. *Colum-*

*bia, etc., R. Co., supra,* is a case, at least to an extent, very similar to the one at bar. The railroad company therein was charged with having obstructed and stopped the natural flow of a stream of water by reason of constructing a dam on its right of way, and thereby causing the water to back upon and flood the lands of the plaintiff to his damage. It was held by the court that 'in an action against a railroad company for damage done to plaintiff's land, through which a right of way had been given, caused by the obstruction by defendant of flowing streams, the complaint fails to state facts sufficient to constitute a cause of action, where it does not allege any facts tending to show that the railroad company, in constructing its roadbed, wantonly or negligently or unskilfully obstructed these streams at their crossing.' "

Appellee's grantor had a right, both under the statute and at common law, to do what it did, subject, of course, to the conditions prescribed by the statute. It did a lawful act upon its own premises, and, in the absence of wilfulness or negligence in doing it, as it was not an insurer, it would not have been liable, and its grantee, without notice, certainly would not be liable. The only charge in the complaint is that the opening was negligently reduced, but there is no charge of negligently continuing the condition. If the rule declared in *Cleveland, etc., R. Co.* v. *Wisehart, supra,* is the law, and it must be so accepted, I cannot see how the act of appellee's grantor was essentially unlawful, or done in defiance of a "mandatory statute." It is my judgment that this statute gave to railroad companies no rights or privileges which they did not possess prior to its enactment, or place upon them any new duties or burdens. They possessed the right to construct their roads over and across streams or watercourses, and at common law were required to do the very things enjoined by the statute. It has always been the law that one riparian owner cannot obstruct the flow of water so as to impair its usefulness to other riparian owners, or cause water to overflow to their

injury. *Weis* v. *City of Madison* (1881), 75 Ind. 241, 39 Am. Rep. 135; *Bristol Hydraulic Co.* v. *Boyer* (1879), 67 Ind. 236; *Scheible* v. *Law* (1879), 65 Ind. 332; *Lane* v. *Miller* (1864), 22 Ind. 104; *Cory* v. *Silcox* (1854), 6 Ind. 39; *Summy* v. *Mulford* (1839), 5 Blackf. 202.

It must be assumed that appellee's grantor owned its right of way. As such right of way crossed this watercourse, it owned the bed thereof the entire width of its right of way. *Sphung* v. *Moore* (1889), 120 Ind. 352; *Bonewits* v. *Wygant* (1881), 75 Ind. 41; *Ridgway* v. *Ludlow* (1877), 58 Ind. 248; *Ross* v. *Faust* (1876), 54 Ind. 471, 23 Am. Rep. 655; *State* v. *Pottmeyer* (1870), 33 Ind. 402, 5 Am. Rep. 224. It therefore follows that appellee, as grantee, owns all of the title which there is in the land over which the stream flows. It cannot be successfully denied that the nuisance is a private one; that there are no averments in the complaint that appellee knew of its existence, and no facts found that can lead to the conclusion that it did know of it.

With this review of the opinion, and the authorities in support of it, I proceed to the consideration of appellee's liability, under the averments of the complaint and the facts specially found. Upon the theory of the ·complaint it was not necessary to' aver and prove notice to appellee before the commencement of the action. But it was necessary to prove that it created the nuisance complained of. It is established by the great weight of the authorities that while it is not necessary to notify one whose act or acts constitute a nuisance, or request him to abate it, yet, where the property upon which it is created is transferred to another during its existence, such grantee is not liable for its continuance until it has been notified of the fact that it is a nuisance or has been requested to abate it; unless it appears that he had full knowledge of the facts which would have been conveyed to him by such notice. He who creates or originates the nuisance continues liable. But the party

damaged cannot pursue the lessee or grantee until he has put such party on his guard, and so it was said in *City of Valparaiso* v. *Bozarth* (1899), 153 Ind. 536, 538, 47 L. R. A. 487: "It is settled that when a party erects or is the author of a nuisance, an action may be maintained against him to abate the nuisance without any notice or request to remove the same." Citing many cases. But the rule is different where a nuisance has been erected or created upon real estate by one party who afterward conveys it to his grantee with the nuisance upon it. "It is held in many cases that the grantee or lessee of real estate, upon which there is an existing nuisance of a nature not essentially unlawful, is liable to an action therefor only after notice to remove or abate it." *City of Valparaiso* v. *Bozarth, supra.* In support of the rule there declared, a great many authorities are collected and cited. In *Plumer* v. *Harper* (1824), 3 N. H. 88, it was said: "It is agreed, in all the books, that the grantee is not liable until, upon request, he refuses to remove the nuisance." In a note to said case in 14 Am. Dec. 333, 336, it was said: "The overwhelming weight of authority therefore, is in favor of the position that no action will lie against him [the grantee] for merely continuing the erection, which constitutes the nuisance, in its original state, unless he has notice to abate it, and such notice is alleged." The reason of the principle of law under consideration is so well stated in *Johnson* v. *Lewis* (1839), 13 Conn. 303, 33 Am. Dec. 405, that I make the following quotation: "But the law is well settled that the purchaser of the property on which a nuisance is erected is not liable for its continuance, unless he has been requested to remove it. This rule is very reasonable. The purchaser of property might be subjected to great injustice, if he were made responsible for consequences of which he was ignorant, and for damages which he never intended to occasion. They are often such as cannot easily be known, except to the party injured. The

plaintiff ought not to rest in silence, and finally surprise an unsuspecting purchaser, by an action for damages; but should be presumed to acquiesce until he requests a removal of the nuisance." In the case of *Pierson* v. *Glean* (1833), 14 N. J. L. 36, 25 Am. Dec. 479, I find the following apt language. "The only question presented to the court on the pleadings in this case, is, whether the action for continuing a nuisance, will lie against him, who did not erect it, before any request made to him to remove or abate the injury. The plaintiff's declaration is not for erecting, but for maintaining and keeping up the dam. The defendant says, that the dam was erected before he became seized or possessed of the premises, and that the plaintiff did not at any time before the commencement of the action request him to reform or remove the injury complained of. * * * The law is settled in *Penruddock's Case* [1598], 5 Coke 101, has never, I believe, been seriously questioned since. In that case it was resolved, that though the continuance of the nuisance by the *feoffee* was a new wrong, yet a *quod permittat* would not lie against him, without the request made."

Counsel for appellant in their brief say that the theory of the complaint is to recover damages for the maintenance of the obstruction and nuisance during the past three years. If I should accept the view thus expressed by counsel (which I cannot do, from what I have already said), the case last cited, which I accept as authority, would be fatal to appellant's contention. In harmony with that case is that of *Groff* v. *Ankembrandt* (1888), 124 Ill. 51, 15 N. E. 40, 7 Am. St. 342. In that case the injury occurred by reason of damming the flow of a watercourse, and there was no averment that the dam constituting a nuisance was erected by the defendant, and so the court held that it must be assumed that the charge was that the defendant was liable for continuing it. In the course of the decision the court said: "Where a party comes into the possession of

land as grantee or lessee, with an existing nuisance upon such land, and he merely permits the nuisance to remain or continue, he cannot be held liable in an action for damages, until he has been first notified or requested to remove the nuisance. It is not right that one, who did not put the nuisance upon the premises in the first place, should be held responsible for injuries that may not have been caused by any act of his own." It would be an unreasonable rule to hold a party having no knowledge or notice of an existing evil responsible for resulting damages. This rule is supported both in reason and by authority. *Conhocton Stone Road* v. *Buffalo, etc., R. Co.* (1873), 51 N. Y. 573, 10 Am. Rep. 646. The rule seems to be well fortified that he who erects a nuisance upon his real estate does not, by conveying the land to another, transfer the liability for the erection of the nuisance to the grantee. This is not a harsh rule, but, on the other hand, a just one, as in such case the original wrongdoer continues liable notwithstanding his alienation. *Eastman* v. *Amoskeag Mfg. Co.* (1862), 44 N. H. 143, 82 Am. Dec. 201.

The case of *Central Trust Co.* v. *Wabash, etc., R. Co.* (1893), 57 Fed. 441, is directly in point. It had relation to a culvert which was built over a small stream. Action was brought to recover damages against a subsequent owner of the property because the culvert was not made large enough. It was there assumed by the court that it was the duty of the railroad company to exercise reasonable care in constructing passageways for water under its bridges and through its embankments so as not unnecessarily to impair its flow. The question there for decision was, whether the Wabash, St. Louis & Pacific Railway Company, who had succeeded by purchase to the rights of the property, etc., of the company which constructed the embankment and culvert, was responsible for damages resulting from the failure of its remote grantee to construct a sufficient embankment and culvert over the watercourse. In his opinion

Judge Baker said: "The nuisance, if there was one, had been erected before the conveyance of the railway to its present owners, by a previous owner, and all that the receiver or the railway he represents has done is merely to continue the culvert and embankment as they were at the time the title was acquired. The subject has been fully considered by the courts both in England and in this country, and, while there is not entire harmony in the views expressed by them, the rule to be deduced from their decisions is that an action on the case for a nuisance lies both against the person who originally committed it and against the person in the occupation or possession of the premises who suffers it to continue, for the reason that the continuance of that which was originally a nuisance is a new nuisance; but, as the purchaser of land might be subject to great injustice if made responsible for the consequences of a nuisance of which he was ignorant, and for damages which he never intended to occasion or continue, it has been held ever since *Penruddock's Case* [1598], 5 Coke 101, that where a party was not the original creator of the nuisance, he must have notice of it, and a request must be made to remove it, before any action can be brought. * * * It therefore follows that the mere continuance of the alleged nuisance on the railway company's land, without any finding of any such knowledge or notice of its existence as to charge the company or its receiver with fault for its continuance, is not sufficient to create any right of action against the company or its receiver."

While there are many additional cases affirming the same rule of law, and while the standard text-writers all approve it, it would be useless to make further quotations from them. I cite some of the leading cases and text-books: *Leahan* v. *Cochran* (1901), 178 Mass. 566, 60 N. E. 382, 53 L. R. A. 891, 86 Am. St. 506; *Slight* v. *Gutzlaff* (1873), 35 Wis. 675, 17 Am. Rep. 476; *Staples* v. *Dickson*

(1896), 88 Me. 362, 34 Atl. 168; *Bruce* v. *State* (1882), 87 Ind. 450; *Steinke* v. *Bentley* (1893), 6 Ind. App. 663; *Ahern* v. *Steele* (1889), 115 N. Y. 203, 22 N. E. 193, 12 Am. St. 778, 5 L. R. A. 449; *Donough* v. *Gilman* (1861), 3 Allen 264, 80 Am. Dec. 72; *Castle* v. *Smith* (1894), (Cal.) 36 Pac. 859; 1 Chitty, Pleading (16th Am. ed.), *94, note (m); Cooley, Torts, *611; 2 Wood, Nuisance (3d ed.), §822; Angell, Watercourses (7th ed.), §403; *Cleveland, etc., R. Co.* v. *Wisehart* (1903), 161 Ind. 208; 1 Hilliard, Torts (4th ed.), 603; Moak's Underhill, Torts, 255; Addison, Torts, *396, *397. So it can make no difference on principle, whether the jury based their verdict upon the theory that appellee's predecessor created the nuisance, and that appellee was a wrongdoer in maintaining it, and hence liable for resulting injury, for in neither event, under the facts found, could it be held legally responsible.

In the light of the authorities, and upon the question tendered by the issues, I am led to the conclusion that appellant is not entitled to recover. This being true, the petition for a rehearing should be granted, and the judgment affirmed.